UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-2395-GW-AGRx | Date | June 22, 2023 |
|---|---|---|---|
| Title | *Julie Ann Goldberg v. Laura Rachel Ruano, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| None Present | None Present | | |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON DEFENDANTS' MOTION TO STRIKE AND DISMISS PURSUANT TO FED. RULE OF CIV. PRO. 12(B)(6) [16]

Attached hereto is the Court's Final Ruling on Defendants Motion [16]. The Court GRANTS IN PART and DENIES IN PART the Motion. The Court GRANTS Defendants' Motion with leave to amend with respect to Plaintiff's claims for abuse of process and malicious prosecution. The Court DENIES Defendants' Motion with respect to Plaintiff's defamation and trade libel claims. Plaintiff shall have four (4) weeks from the entry of this Order to file an amended complaint.

| | : |
|---|---|
| Initials of Preparer | JG |

***Julie Ann Goldberg v. Laura Rachel Ruano et al***; Case No. 2:23-cv-02395-GW-(AGRx)
Final Ruling Motion to Strike and Dismiss Pursuant to Fed. Rule of Civ. Pro. 12(b)(6)

I. **Background**

Julie Ann Goldberg ("Plaintiff") sues Laura Rachel Ruano ("Ms. Ruano") and Thomas Monteleone ("Mr. Monteleone") (collectively, "Defendants") for (1) wrongful use of civil proceedings, or malicious prosecution, (2) defamation, (3) abuse of process, and (4) trade libel. *See generally* Complaint ("Compl."), Docket No. 1. In the Complaint, Plaintiff alleges the following.

On or about February 1, 2021, non-party Luis Ruano ("Luis") retained Plaintiff to represent him in divorce proceedings against Ms. Ruano. *Id.* ¶ 7. On February 16, 2021, Plaintiff filed a petition for dissolution of marriage on Luis' behalf in Los Angeles Superior Court in a case entitled *In re Marriage of Ruano*, LASC No. 21VEFL00184 (the "Divorce Proceeding"). *Id.* ¶ 9. The next day, on February 17, 2021, Plaintiff served Ms. Ruano at her place of business and introduced herself as Luis' attorney. *Id.* ¶ 10. According to Plaintiff, this was the first time she had met or spoken to Ms. Ruano. *Id.*

A few months later, on August 10, 2021, Ms. Ruano sued Plaintiff, Luis, and Luis' son for (1) breach of fiduciary duty, (2) intentional interference with marital relations, and (3) intentional infliction of emotional distress in Los Angeles Superior Court in a case entitled *Laura Ruano v. Julie Goldberg, et al.*, LASC No. 21VECV01054 (the "First Civil Action"). *Id.* ¶ 12. Ms. Ruano alleged that "Plaintiff had previously represented [her] in several prior legal matters and therefore could not engage in representation adverse to [Ms. Ruano] by representing Luis in the Divorce Proceeding." *Id.* On January 2, 2022, Plaintiff emailed Ms. Ruano's attorney in the First Civil Action with evidence purportedly showing that Plaintiff never represented Ms. Ruano. *Id.* ¶ 18. On October 17, 2022, Plaintiff filed an anti-SLAPP motion, which the trial court granted on December 13, 2022. *Id.* ¶¶ 40-41.[1]

Meanwhile in the Divorce Proceeding, on February 2, 2022, Ms. Ruano filed a request for order to disqualify Plaintiff as counsel, which Ms. Ruano supported with declarations from herself and her father, Mr. Monteleone. *Id.* ¶¶ 20-21. The Complaint alleges that both declarations falsely

---

[1] According to Plaintiff's opposition brief, Ms. Ruano appealed the trial court's decision granting the anti-SLAPP motion and that appeal is currently pending before the California Court of Appeal. *See* Docket No. 17 at 3-4.

claimed that Plaintiff had previously represented Defendants in prior legal proceedings. *Id.* ¶¶ 22-23. On February 25, 2022, Ms. Ruano and Mr. Monteleone were served with subpoenas, seeking to elicit live testimony in connection with their declarations. *Id.* ¶ 24. After they were served with the subpoenas, both Ms. Ruano and Mr. Monteleone purportedly contacted the police and filed false police reports against Plaintiff. *Id.* ¶¶ 25-26. Following oral argument, on March 22, 2022, the trial court denied Ms. Ruano's request to disqualify Plaintiff, finding that Plaintiff was not retained and there was no conflict. *Id.* ¶ 29.

Around the same time, on March 9, 2022, Ms. Ruano filed a petition for a civil harassment restraining order against Plaintiff in Los Angeles Superior Court in a case entitled *Ruano v. Goldberg*, LASC No. 22VERO00392 (the "Restraining Order Case"). *Id.* ¶ 30. The trial court dismissed the Restraining Order Case with prejudice, on August 8, 2022, after Ms. Ruano's counsel made the request by way of oral motion. *Id.* ¶ 39.

On March 21, 2022, Ms. Ruano and Mr. Monteleone filed a second civil complaint against Plaintiff for (1) assault, (2) trespass, and (3) intentional infliction of emotional distress in Los Angeles Superior Court in a case entitled *Monteleone v. Goldberg*, LASC No. 22VECV00402 (the "Second Civil Action"). *Id.* ¶ 32. In the Second Civil Action, Ms. Ruano and Mr. Monteleone alleged that "Plaintiff sent a man with a gun to [Ms. Ruano's] and [Mr. Monteleone's] place of employment for a set-up robbery." *Id.*[2] Plaintiff removed the Second Civil Action to federal court, on July 15, 2022. *Id.* ¶ 36.[3] Plaintiff filed an anti-SLAPP motion, but Ms. Ruano and Mr. Monteleone voluntarily dismissed the case without prejudice before the court could rule on Plaintiff's motion. *Id.* ¶¶ 37-38.

The Complaint also alleges that Ms. Ruano's and Mr. Monteleone's home was burglarized, on March 29, 2022. *Id.* ¶ 33. That night, they both allegedly filed another false police report against Plaintiff. *Id.* And, on March 31, 2022, Ms. Ruano allegedly sent Luis a text message stating, "Just this week [Plaintiff] sent her guys to my house and robbed me." *Id.* ¶ 34. In addition, Ms. Ruano allegedly filed a California state bar complaint against Plaintiff in August 2022. *Id.* ¶

---

[2] According to Plaintiff's opposition brief, the complaint in the Second Civil Action also alleged that "Plaintiff assaulted, trespassed and intentionally inflicted severe emotional distress upon [Ms. Ruano and Mr. Monteleone] when they were served with subpoenas in connection with their declarations in the [Divorce Proceeding]." *See* Docket No. 17 at 4.

[3] *See Thomas Anthony Monteleone et al v. Julie Goldberg et al*, No. 2:22-cv-04858-FMO-(Ex) (C.D. Cal.).

42.

Now pending before the Court is Defendants' anti-SLAPP motion to strike the Complaint. *See* Motion to Strike ("Motion" or "Mot."), Docket No. 16. Plaintiff opposes the Motion. *See* Opposition to anti-SLAPP Motion to Dismiss ("Opp."), Docket No. 17. Defendants filed an untimely reply brief on June 15, 2023. *See* Docket No. 19.[4] The Court heard oral argument on June 22, 2023.

## II.  Legal Standard

California's anti-SLAPP procedure – which applies, at least in part, in federal court[5] – is designed to prevent a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." Cal. Code Civ. Proc. § 425.16(b)(1). In a motion to strike under section 425.16, the court engages in a two-part analysis: (1) the court decides whether the moving party has made a threshold showing that the challenged causes of action arise from a protected activity; and (2) if such a showing has been made, the burden then shifts to the opposing party to demonstrate a probability of prevailing on the merits of their claims. *See Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002); *see also Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1119 (9th Cir. 2017).

As the foregoing suggests, the moving party bears the initial burden of establishing a *prima facie* showing that the opposing party's cause of action arises from the defendant's free speech or petition activity. *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007). "A defendant meets [its burden under section 425.16(b)(1)] by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)…." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (quotation marks omitted). The statute includes four categories of protected conduct in that subdivision:

---

[4] Local Rule 7-12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. L.R. 7-12. Because the hearing on Defendants' Motion is set for June 22, 2023, the Defendants' reply brief was due on June 8, 2023, pursuant to Local Rule 7-10. *See* C.D. Cal. L.R. 7-10 (instructing that reply papers be filed no later than 14 days before the date designated for hearing). As the reply brief is untimely, the Court could simply disregard it. However, given the law's strong preference to determine cases on their merits, *see Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111-12 (9th Cir. 2011), the Court will exercise its discretion to consider the late-filed reply brief, and rule on the merits of Defendants' Motion.

[5] When a district court sits in diversity, as is the case here, the Court applies California substantive law. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

3

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to its asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (emphasis in original). Thus, the critical question is whether Plaintiff's claim is *based on* an act or acts in furtherance of the right of petition or free speech. *See Jordan-Benel*, 859 F.3d at 1190; *City of Cotati,* 29 Cal. 4th at 78. Whether the anti-SLAPP statute applies is determined by the "principal thrust or gravamen" of plaintiff's claim. *See Martinez v. Metabolife Int'l, Inc.,* 113 Cal. App. 4th 181, 188 (2003).

Where the moving party satisfies its *prima facie* burden at the first step, "[t]he burden then shifts to the plaintiff … to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261. At the second step of the anti-SLAPP process, a plaintiff must demonstrate that the complaint is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009); *see also Makaeff*, 715 F.3d at 261. The required probability of prevailing "need not be high." *Hilton*, 599 F.3d at 908. However, "a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or 'when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).

### III. Discussion

#### A. Plaintiff's Argument about Defendants' Failure to Meet and Confer

In relevant part, Local Rule 7-3 provides "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. Courts in this district

4

have denied motions based on a party's failure to comply with Local Rule 7-3. *See Boedeker v. Farley*, No. 8:19-cv-02443-MCS-(JDEx), 2020 WL 2536969, at *1 (C.D. Cal. Feb. 5, 2020); *R.H. v. City of San Bernardino*, No. 5:18-cv-01232-JLS-(KKx), 2019 WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) ("Accordingly, because Defendants failed to comply with Local Rule 7-3, the Court STRIKES both Motions ... and vacates the ... hearing date."); *Munoz-Guzman v. Humberto's Mexican Food*, No. 2:18-cv-05813-PSG-(JCx), 2018 WL 8803946, at *2 (C.D. Cal. Dec. 4, 2018) (denying motion and stating "[t]he Court generally does not excuse noncompliance with Rule 7-3"). The meet-and-confer requirement is not suggestive but mandatory. Failure to comply with Local Rule 7-3 means that the Court may deny the motion.

Plaintiff alleges that Defendants failed to comply with the full extent of Local Rule 7-3. First, Plaintiff states that while Plaintiff's counsel and Defendants' counsel did meet and confer on May 18, 2023, this was in relation to another case. *See* Opp. at 4-5; *see also* Declaration of S. Martin Keleti ("Keleti Decl."), Docket No. 16, at ¶¶ 2-5. Because Plaintiff's counsel was not prepared to discuss the instant Motion, counsel agreed to continue the discussion to a later date in June. *See* Opp. at 5; *see also* Keleti Decl. ¶ 5. Second, Plaintiff argues that Defendants' counsel then failed to wait seven days prior to filing the Motion, as the Motion was filed on May 23, 2023—only five days after the purported meet-and-confer discussion took place. *See* Opp. at 6.

Defendants' counsel disputes these allegations, claiming that Plaintiff's counsel agreed to a 30-day extension to respond to the Complaint and that they would further meet and confer once Defense counsel returned from vacation. *See* Reply at 1-2. However, Plaintiff's counsel rescinded the 30-day extension, causing Defense counsel to prepare and file this Motion in one day. *See id.*

Nevertheless, because the Motion was filed on May 23, 2023, the Court concludes that Defendants have not complied with Local Rule 7-3. That said, the Court, in its discretion, will nonetheless rule on the merits of the dispute. Moving forward, any future failure to engage in the required meet-and-confer process may result in appropriate sanctions.[6]

### B. Application of the Anti-SLAPP Statute

To the extent that Plaintiff's claims are premised upon Defendants' conduct during, or in connection with, multiple prior civil litigation proceedings and complaints to the state bar,

---

[6] Additionally, none of the parties' briefing includes the Local Rule 11-6.2 Certificate of Compliance regarding the type-volume limitation of Local Rule 11-6.1. *See* C.D. Cal. L.R. 11-6.1. Going forward, the Court expects that the parties will fully comply with the Court's Local Rules, including Local Rule 11-6.2.

Defendants have met their burden to show the claims are based upon activity protected by the anti-SLAPP statute. *See Intermarketing Media, LLC v. Barlow*, No. 8:20-cv-00889-JLS-(DFMx), 2021 WL 5990190, at *6 (C.D. Cal. May 4, 2021) (finding that "the actual filing of civil litigation, criminal complaints, and complaints or reports to the state bar agencies" is covered by the anti-SLAPP statute); *see also Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 322 (2017) (holding that claims asserted against State Bar based on charges pursued against an attorney were protected). This conduct falls squarely within the coverage of section 425.16. *See* Cal. Code Civ. Proc. § 425.16(e)(1) ("any written ... statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law").

In fact, Plaintiff concedes that "many of Ms. Ruano's alleged wrongful acts are within the scope of the first prong." Opp. at 7. Plaintiff, however, argues that filing a false police report and sending a defamatory text message are not covered by the anti-SLAPP statute. *Id.* at 7-8. The Court addresses both contentions.

First, "statements to law enforcement [] are protected as 'any written or oral statement or writing made in connection with an issue under consideration or review by … a judicial body, or any other official proceeding authorized by law." *Biro v. Keyes*, No. 2:21-cv-06835-JGB-(MAA), 2022 WL 2102898, at *14 (C.D. Cal. Feb. 23, 2022) (quoting Cal. Code Civ. Proc. § 425.16(e)(2)); *see also Comstock v. Aber*, 212 Cal. App. 4th 931, 941 (2012) ("The law is that communications to the police are within SLAPP."); *Walker v. Kiousis*, 93 Cal. App. 4th 1432, 1439 (2001) (stating that complaint to police is "made in connection with an official proceeding authorized by law" and therefore falls within SLAPP); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1286 (2008) (finding protected "communications [that] sought official investigations into perceived wrongdoing, which might culminate in criminal prosecution or other official proceedings"). Plaintiff's allegations that Ms. Ruano's and Mr. Monteleone's "police reports were false does not exempt [her] claim[s] from the anti-SLAPP motion under *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 703 (2011), which applies to false accusations of criminal conduct." *Moore v. Rodriguez*, No. 3:20-cv-01481-BAS-(BGSx), 2021 WL 2222590, at *8 (S.D. Cal. June 2, 2021). As summarized by the court in *Moore*:

> In *Lefebvre*, the plaintiff sued his former spouse for malicious prosecution and similar causes of action, after the defendant-spouse brought false criminal accusations against the plaintiff to gain an advantage in the couple's divorce proceedings. *Id.* at 700. The court found that the defendant spouse "[did] not contest that she submitted an illegal, false criminal report," and held that "[f]iling a false

6

> criminal complaint is an illegal activity, [and] not a constitutionally protected exercise of the right of petition or free speech" for purposes of the anti-SLAPP statute. *Id.* at 705–06. California courts construing *Lefebvre* have clarified that if the litigant disputes the falsity of the police report, the *Lefebvre* exemption does not apply to bring the police report outside the scope of protection of the anti-SLAPP statute. *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 966 (2014) ("[T]he making of allegedly false police reports ... can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted.").

*Id.*

While Defendants argue that statements made to the police are protected activity, *see* Reply at 4, neither party addresses the *Lefebvre* exemption. The Court assumes that Defendants dispute Plaintiff's allegations that their police reports were false. Even so, Defendants failed to submit any evidence controverting any of Plaintiff's allegations, such as a declaration stating under penalty of perjury that the information they provided to the police was true and accurate. At the hearing, Defendants continued to argue that police reports are protected activity, but failed to address the *Lefebvre* exemption and the *Lefebvre* court's holding that "[f]iling a false criminal complaint is an illegal activity, [and] not a constitutionally protected exercise of the right of petition or free speech" for purposes of the anti-SLAPP statute. *Lefebvre*, 199 Cal. App. 4th at 705-06. As such, the Court is not convinced that Defendants have carried their burden on the first prong of the two-part test for claims based on allegedly false police reports.

Second, Plaintiff argues that "[s]ending a defamatory text message about Plaintiff to Luis is not in connection with a legal proceeding, even if Luis and Plaintiff were engaged in a legal proceeding against Ms. Ruano." Opp. at 7. Defendants counter that the text message is "subject to the anti-SLAPP statute" because it was "clearly made between two people involved in a divorce where one tells th[e] other that his lawyer is not presenting him with her settlement offers." Reply at 6. The text message at issue reads as follows:

> I do not want what is happening between me and Goldberg to permanently affect our relationship. What she is doing to me is so bad. I have the feeling that Goldberg is not presenting you with my settlement offers but I want you to know that if we settle our divorce I will happily dismiss your son from the lawsuit and just proceed against Goldberg because of what she is doing to me. Just this week she sent her guys to my house and robbed me. It is best that both of us can go our separate ways and move on with our lives.

Declaration of Julie Ann Goldberg ("Goldberg Decl."), Docket No. 18, Ex. Z.

"[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and [do] not require any showing that the litigated matter concerns a matter of public interest." *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007) (citations omitted). "Thus, an action for defamation falls within the anti-SLAPP statute if the allegedly defamatory statement was made in connection with litigation." *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 5 (2006).

Because the text message refers to both the Divorce Proceeding and the First Civil Action, is the text message "in connection" with judicial proceedings? Alternatively, Ms. Ruano purportedly filed a police report against Plaintiff regarding the alleged robbery at her house. *See* Compl. ¶ 34. Could the text message therefore constitute a "writing made in connection with an issue under consideration or review by a[n] … executive … body, or any other official proceeding authorized by law"? Neither party's briefing sufficiently untangles these questions.

Nevertheless, Plaintiff states that "[e]ven assuming that the first prong is met for most allegations, that is not the end of the analysis, so rather than devote time and limited space to briefing this issue, Plaintiff focuses on the merits of the issues in the second prong." Opp. at 8. As a result, Plaintiff's opposition brief primarily focuses on the second step of the anti-SLAPP analysis. Therefore, the Court will proceed to the second stage of the anti-SLAPP inquiry.

The Ninth Circuit has instructed courts that where, as is the case here, a defendant's anti-SLAPP motion is directed at the legal viability of a claim, as opposed to the *factual/evidentiary* sufficiency of a claim, a responding plaintiff need not provide evidence – the question is only the sufficiency of the plaintiff's claim under a Rule 12(b)(6) standard. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018), *cert. denied*, 139 S.Ct. 1446 (2019). Defendants' second-step argument here is not that Plaintiff has insufficient facts or evidence to support her claims, but instead that the claims simply are not viable as a matter of law because they are based upon conduct that, according to Defendants, is clearly protected by California's litigation privilege.[7] Indeed, Defendants' sole argument is that "[b]ecause the

---

[7] "The litigation privilege is … relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006); *see also McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 108 (2007) ("In [the second step], the plaintiff must show … that the claim is legally sufficient … [i]n making this assessment, the court must … examine whether there are any constitutional or nonconstitutional defenses to the pleaded claims and, if so, whether there is evidence to negate any such defenses.") (internal citations omitted).

statements made by Defendants are totally privileged, [Plaintiff] cannot, as a matter of law, prevail on any of the causes of action in the complaint." Mot. at 9. As a result, the Court believes that *Planned Parenthood* establishes the appropriate manner for assessing the anti-SLAPP second-step here.

At the hearing, Defendants seemed to pivot their second-step argument by arguing that Plaintiff failed to provide evidence to support her claims. First, as noted above, Defendants did not raise a factual challenge in their Motion. *See generally* Mot. Arguments not raised in the briefing are deemed waived. *See United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006). Second, in federal court, "[r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure." *Planned Parenthood*, 890 F.3d at 833-34. Countenancing no such "usurp[ation] [of] the federal rules," the Ninth Circuit in *Planned Parenthood* set forth the standard for district courts' evaluation of anti-SLAPP motions: where an anti-SLAPP motion "challenges only the legal sufficiency of a claim, a district should apply the [Rule] 12(b)(6) standard," whereas when an anti-SLAPP motion "challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.* at 834. In a factual challenge, "discovery must be allowed, with opportunities to supplement evidence based on the factual findings, before any decision is made by the court." *Id.*

Neither party argued that *Planned Parenthood* does not establish the appropriate manner for assessing the anti-SLAPP second-step here. Moreover, even if Defendants' Motion raised a factual challenge (it did not), the Court could not grant its entire Motion, as Defendants requested at the hearing, because it would have to allow discovery to be conducted prior to any final decision by this Court. For these reasons, the Court concludes that because Defendants' Motion only challenges the legal sufficiency of Plaintiff's claims, the Rule 12(b)(6) standard applies and Plaintiff need not provide evidence.

Section 47(b) of the California Civil Code includes within the definition of a "privileged publication" "one made … [i]n any … judicial proceeding," with certain exceptions thereafter recited. Cal. Code Civ. Proc. § 47(b). Consequently, "California's litigation privilege applies to any communication '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some

9

connection or logical relation to the action.'" *Graham-Sult v. Clainos*, 738 F.3d 1131, 1147 (9th Cir. 2013) (quoting *Mansell v. Otto*, 108 Cal. App. 4th 265, 271 (2003)). But it is not limited merely to statements made in court or in court-filings. "The absolute privilege attaches to any publication that has any reasonable relation to the action and is permitted by law if made to achieve the objects of the litigation, 'even though the publication is made outside the courtroom and no function of the court or its officers is invoked.'" *Smith v. Hatch*, 271 Cal. App. 2d 39, 45 (1969) (quoting *Albertson v. Raboff*, 46 Cal. 2d 375, 381 (1956)); *see also Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)."). Indeed, it may extend even to illegal conduct. *See Flatley*, 39 Cal. 4th at 324 ("Applying the litigation privilege to some forms of unlawful litigation-related activity may advance those broad goals [of the litigation privilege] notwithstanding the 'occasional unfair result' in an individual case."); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) ("The privilege 'immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution.'") (quoting *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010)); *Steiner v. Eikerling*, 181 Cal. App. 3d 639, 643 (1986) (holding that privilege encompassed filing of forged will in probate court). As a result, to the extent Plaintiff asserts that the litigation privilege is inapplicable due to Defendants' allegedly illegal or fraudulent conduct, this argument is unavailing.

"The filing of civil complaints, reports to law enforcement officials, and state bar complaints all fall within the heart of conduct protected by the litigation privilege." *See Intermarketing Media*, 2021 WL 5990190, at *6 (collecting cases); *see also Kenne v. Stennis*, 230 Cal. App. 4th 953, 971 (2014) (holding that defendants' conduct in filing allegedly false police reports and all communications concerning civil harassment petitions, including allegedly false declarations, were protected by litigation privilege from plaintiff's intentional infliction of emotional distress claim).

Plaintiff's main argument for avoiding the force of the litigation privilege here—at least with respect to her defamation and trade libel claims—is that these claims are "not based on privileged communications in the various litigation[s] that preceded this action, but rather the filing of false police reports … and texting defamatory messages." Opp. at 9. As a preliminary matter, the Complaint does not cabin these claims to the allegedly false police reports and the defamatory

text message. *See* Compl. ¶¶ 51-59, 66-74. Nevertheless, assuming that these claims are limited as Plaintiff suggests, Plaintiff asserts that filing false police reports and sending defamatory text messages are "not covered by the litigation privilege" without any citation to authority supporting that point. Opp. at 9. Defendants' reply brief does not fare any better as it merely concludes (without any support) that these claims are based on privileged conduct. *See* Reply at 6.

In *Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 350 (2004), the California Supreme Court held that, under Section 47(b), statements made to law enforcement personnel reporting suspected criminal activity are "absolutely" privileged because they were made to "law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond." *Id.* at 364. However, the Court's research indicates that Section 47(b) was revised effective January 1, 2021, to add the following exception:

> (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

*See* 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775). "Given this amendment, under current California law there is only a qualified privilege for reports of a crime—reports that are intentionally false or made with reckless disregard of their truth are not privileged." *Moore*, 2021 WL 2222590, at *11 (quoting *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, No. 1:20-cv-00117-JMS-(RTx), 2021 WL 233695, at *2 n.5 (D. Haw. Jan. 22, 2021 (quotations omitted)); *see also King v. City of Sacramento*, No. 2:20-cv-01326-KJM-(DBx), 2022 WL 37048, at *3 (E.D. Cal. Jan. 4, 2022) ("Prior to 2021, the California Supreme Court held the privilege was absolute, so it applied 'without respect to the good faith or malice of the person who made the statement'… [but] the California Legislature amended the law … to make the privilege a qualified one"). Therefore, Section 47(b) would presumably not bar Plaintiff's claims if it is shown that Defendants' police reports were falsified. *See Moore*, 2021 WL 2222590, at *11.[8]

Ultimately, the litigation privilege is an affirmative defense; Defendants bear the burden of showing it applies to their conduct. *See Laker v. Bd. of Trustees of California State Univ.*, 32

---

[8] The Court notes that "the amendment does not apply retroactively." *King*, 2022 WL 37048, at *3. This does not impact the analysis here, however, because Defendants communicated with the police in 2022, *after* the amendment took effect. *See* Compl. ¶¶ 25-26, 33.

11

Cal. App. 5th 745, 769 (2019) (holding that defendants bear the burden of proof when asserting an affirmative defense in the context of an anti-SLAPP motion). What case(s) do Defendants have that demonstrates that their conduct (*i.e.*, the police reports and text message) falls within the litigation privilege? For the reasons discussed above, the Court is not convinced that Defendants have met their burden of showing that the privilege applies.[9] *See Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 116-118 (2017) (finding that defendants met their burden of showing that the litigation privilege applies in the context of an anti-SLAPP motion). And because Defendants' briefing did not raise a factual challenge, as indicated above, the Court declines to grant Defendants' Motion on the basis that Plaintiff failed to provide evidence in support of her defamation and trade libel claims.

Turning to Plaintiff's abuse of process claim, claims for abuse of process are subject to the anti-SLAPP statute where the claim "arises out of [plaintiff's] filing the underlying action." *Booker v. Rountree*, 155 Cal. App. 4th 1366, 1370 (2007). "The theory of recovery, and the essence of the claim, is [ ] that the underlying litigation was conducted in an improper manner." *Id.* at 1370-71. Defendants argue, as above, that the litigation privilege shields their conduct and that, as a result, Plaintiff cannot meet her burden under the second step inquiry. In her opposition brief, Plaintiff merely states that "simply because it is easy to meet prong one does not mean that Defendants will prevail on the second prong." *Id.* at 9. The Complaint indicates that Plaintiff's abuse of process claim is premised on "Defendants['] amended complaints, filed requests for orders, and filed declarations in support of the … legal proceedings they initiated against Plaintiff." Compl. ¶ 61. Plaintiff also alleges that "Defendants intentionally used these legal procedures to cause harm, harass, annoy [] for an improper purpose that [the] procedure was not designed to achieve." *Id.* ¶ 62.

As discussed above, filing civil complaints and lawsuits obviously falls within the litigation privilege. *See Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."). Additionally, "[t]he pleadings and process in a [civil] case are

---

[9] Of course, the Court (and Plaintiff) may not need to reach the second step of the anti-SLAPP inquiry here if Defendants cannot carry their burden on the first prong for claims based on the allegedly false police reports and the defamatory text message, as indicated above. However, because Plaintiff largely focuses on the second prong in her opposition brief, the Court includes the above discussion for completeness.

12

generally viewed as privileged communications." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (internal alteration marks and quotation marks omitted). "The privilege has been applied specifically in the context of abuse of process claims alleging the filing of false or perjurious testimony or declarations." *Id.* (citations omitted); *see also Pollock v. Univ. of S. Cal.*, 112 Cal. App. 4th 1416, 1431 (2003) (holding that a declaration "functions as written testimony" and is "exactly the sort of communication the privilege is designed to protect"); *Pettit v. Levy*, 28 Cal. App. 3d 484, 489 (1972) (preparing and presenting false documents to the court is protected by the litigation privilege).

Plaintiff has not demonstrated that she has any possibility of overcoming the litigation privilege resident in Section 47(b) with respect to her claim for abuse of process, a conclusion that the Court can reach simply by reviewing the allegations in the Complaint. *See* Compl. ¶¶ 61-62. Plaintiff therefore fails to satisfy her burden at the second-step of the applicable anti-SLAPP analysis. Accordingly, the Court grants, with leave to amend, the Motion as to Plaintiff's abuse of process claim. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."); *see also Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) ("[I]t is generally error to grant a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend.").

Finally, Defendants seemingly move to strike Plaintiff's claim for malicious prosecution on the same ground as above (*i.e.* that this claim is also barred by the litigation privilege). *See* Mot. at 7-8. However, Defendants ignore that "[S]ection 47(b) operates to bar civil liability for any tort claim based upon a privileged communication, *with the exception of malicious prosecution*." *Hagberg*, 32 Cal. 4th at 375 (emphasis added). Although a malicious prosecution claim would be immune from Defendants' Section 47(b) defense, it would not be immune from an anti-SLAPP challenge. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 735 (2003).

To state a claim for malicious prosecution under California law, a plaintiff must plead that the prior proceeding was: (1) pursued to a legal termination favorable to the plaintiff, (2) brought without probable cause, and (3) initiated with malice. *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992). Other than concluding that "Ms. Ruano repeatedly commenced legal proceedings absent

13

any probable cause and with an ulterior purpose and motive," Opp. at 8, Plaintiff does not engage with the elements for a malicious prosecution claim. Instead, Plaintiff's only argument is that her "declaration demonstrates that Ms. Ruano (and Mr. Monteleone sometimes acting in concert with her) have gone after Plaintiff in numerous ways—making an unsupported motion to disqualify Plaintiff from representing Luis, applying for a civil harassment restraining order against Plaintiff, and filing false police and State Bar reports regarding Plaintiff—simply to harass Luis and Luis' attorney, and make it harder on [Luis' son]." *Id.* at 8-9. Because Defendants have met their burden to prove the applicability of the anti-SLAPP statute (for at least most of these activities), Plaintiff must then make a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton*, 599 F.3d at 908. Plaintiff has failed to do so here.

There is nothing in the Complaint, other than conclusory allegations which the Court need not credit in conducting a Rule 12(b)(6) analysis, *see* Compl. ¶¶ 46, 47, 50, that the three underlying legal proceedings lacked probable cause or were initiated with malice. If her opposition brief is any indication, it appears that Plaintiff may not have any sufficiently factual allegations as she fails to direct the Court to any specific paragraphs in her Complaint that support a finding of malice or a lack of probable cause. Moreover, Plaintiff's opposition brief fails to set forth the applicable legal standards for probable cause and malice. Rather, Plaintiff concludes that she "is likely to prevail on this claim" without offering any analysis. Opp. at 9.

Further, even though the Complaint states that "[a]ll three legal proceedings [(*i.e.* the First Civil Action, the Restraining Order Case, and the Second Civil Action)] ended in Plaintiff's favor," the Court has a few questions concerning the First Civil Action, the Second Civil Action, and the Restraining Order Case. It is the Court's understanding that Plaintiff was dismissed from the First Civil Action through the use of an anti-SLAPP motion, but Ms. Ruano has appealed that decision. Because Plaintiff's dismissal from the First Civil Action is currently on appeal, can this constitute as a "favorable termination" in Plaintiff's favor? Turning to the Second Civil Action, Defendants voluntarily dismissed their case *without prejudice*. Is a voluntary dismissal without prejudice a "favorable termination" for purposes of a malicious prosecution claim? Similarly, the Restraining Order Case was voluntarily dismissed by Ms. Ruano. Based on the Court's research, "a party's voluntary dismissal is considered a favorable termination for the opposing party unless there is a reason for the dismissal not having to do with the merits of the action." *Fabbrini v. City of*

*Dunsmuir*, 544 F. Supp. 2d 1044, 1048 (E.D. Cal. 2008) (citing *MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 289 (1969)). "The determination of the reasons underlying the dismissal is a question of fact." *Haight v. Handweiler*, 199 Cal. App. 3d 85, 89 (1988). Here, however, Plaintiff has not demonstrated that the dismissals were on the merits of the action. Ultimately, Plaintiff may be able to prevail on a malicious prosecution claim, but to convince the Court that she can, she will need to explain how all three elements are satisfied. Therefore, the Court grants, with leave to amend, the Motion as to the malicious prosecution claim. *See Verizon Delaware*, 377 F.3d at 1091.

Lastly, Defendants argue that Plaintiff's claims are precluded by the doctrine of res judicata. *See* Reply at 7. This argument was not raised in Defendants' Motion; rather, it was raised for the time in their reply brief. "Courts decline to consider arguments that are raised for the first time in reply." *FT Travel – New York, LLC v. Your Travel Ctr.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases). Because this new issue was raised for the first time in Defendants' reply brief, the Court declines to consider this new argument.

### C. Attorney's Fees

The anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) ("If an anti-SLAPP motion to strike is granted, the suit is dismissed and the prevailing defendant is entitled to recover his or her attorney's fees and costs."); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) ("The statute is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating him or herself from a baseless lawsuit."). If a court finds that a special motion to strike is "frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." Cal. Civ. Proc. Code section 425.16(c)(1).

Because the Court denies in part and grants in part Defendants' Motion with leave to amend, Defendants are not yet the prevailing parties for purposes of the anti-SLAPP statute and therefore an award of fees is not appropriate at this juncture.

### IV. Conclusion

Based on the foregoing discussion, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. The Court **GRANTS** Defendants' Motion with leave to amend with respect to

15

Plaintiff's claims for abuse of process and malicious prosecution. The Court **DENIES** Defendants' Motion with respect to Plaintiff's defamation and trade libel claims. Plaintiff shall have four (4) weeks from the entry of this Order to file an amended complaint.