GOLDBERG & ASSOCIATES, P.C.
JULIE A. GOLDBERG (SBN 235565)
14370 Ventura Boulevard
Sherman Oaks, California 91423
Telephone: (818) 999-1559
Email: ecf@goldbergimmigration.com

KELETI LAW
S. MARTIN KELETI (SBN 144208)
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, California 90212-1671
Telephone: (323) 308-8489
E-mail: s.martin.keleti@gmail.com

*Attorneys for Plaintiff Julie Ann Goldberg*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ANN GOLDBERG, an individual;<br><br>Plaintiff,<br><br>v.<br><br>LAURA RACHEL RUANO, an individual; and<br>THOMAS MONTELEONE, an individual;<br><br>Defendants. | Case No. 2:23-cv-02395-GW-AGRx<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR MALICIOUS PROSECUTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Julie Ann Goldberg ("Plaintiff") alleges:

**I.**

**SUBJECT MATTER JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332(a) because: (1) there is complete diversity of citizenship between Plaintiff and Defendants; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of the State of New York; Defendants are citizens of the State of California.

2. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this District because the Defendants are domiciled and reside in this judicial district. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## II.

## PARTIES

3. Plaintiff JULIE ANN GOLDBERG ("Plaintiff") is a California licensed attorney. Plaintiff is a resident of Bronx, New York.

4. Defendant LAURA RACHEL RUANO ("Laura") is a resident of Los Angeles, California.

5. Defendant THOMAS MONTELEONE ("Thomas") is a resident of Los Angeles, California. Thomas is Laura's father. Thomas's business is a restaurant called Barone's, which employs Laura.

6. Each of the Defendants was an agent, employee, alter ego, or co-conspirator of each of the other Defendant, and was at all times acting within the purpose and scope of said agency, employment, and conspiracy, and each of the Defendants has ratified and approved the acts of the other Defendant.

## III.

## BACKGROUND

7. The underlying litigation began with a simple divorce case: the divorcing couple were married to each other for only four years, had no children, earned the

same income, owned their own house before marriage, had no substantial assets together, and lived financially separate during the marriage. What started out as an attorney (Plaintiff) taking on a simple divorce matter for the father of Plaintiff's law clerk on a *pro bono* basis, however, quickly escalated into a slew of lawsuits, criminal reports, restraining orders, and State Bar investigations against Plaintiff (the divorce petitioner's attorney). The aphorism that "no good deed goes unpunished" immediately applied to Plaintiff.

8. The false and reprehensible allegations maintained by the estranged wife and her father (the Defendants in this action) in their lawsuits were unsupported by any evidence, facts or law. The Defendants did not reasonably believe that there was any probable cause to initiate the proceedings because the Defendants knew the falsity of the fabrications when they initiated the proceedings. *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 881 (1989).

9. Plaintiff hired and paid an attorney to help defend her in the three lawsuits, which were all successfully defended and all terminated in Plaintiff's favor. Accordingly, Plaintiff brings the instant action for malicious prosecution, seeking compensation for her attorney fees and costs, as well as the emotional distress and injury to her reputation because of the groundless allegations made in pleadings which are public records. *Sagonowsky v. More*, 64 Cal. App. 4th 122, 132 (1998).

10. "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings." *Merlet v. Rizzo*, 64

Cal.App.4th 53, 59 (1998).

## IV.

## CLAIM FOR RELIEF

### WRONGFUL USE OF CIVIL PROCEEDINGS
(Against Laura and Thomas)

11. Plaintiff repeats and incorporates by reference into this claim for relief the allegations of paragraphs 1 through 10, inclusive, as if fully set forth.

### a. Luis Retains Plaintiff.

12. On or about February 1, 2021, Luis Roberto Ruano ("Luis")–not a party to this action–met with Plaintiff for a legal consultation to discuss divorcing Laura. After the consultation, Luis retained Plaintiff as his attorney.

13. This was the first time Plaintiff had ever met or spoken to Luis, and the first time Plaintiff learned of Laura's existence. At no time prior to meeting Luis did Plaintiff ever meet, know, speak to, or have any communication with Laura.

14. On February 16, 2021, Plaintiff filed a petition for dissolution of marriage on Luis's behalf against Laura in the Los Angeles Superior Court, entitled *In re Marriage of Ruano,* Case No. 21VEFL00184 (the "Divorce Proceeding").

15. On February 17, 2021, Plaintiff went to Laura's place of business, introduced herself as Luis's attorney and discreetly personally served Laura with process in the Divorce Proceeding. This was the first time Plaintiff had met and spoken to Laura.

16. Moments after Plaintiff served Laura, Laura chased Plaintiff down the street and sent Luis a text message asking, "Why are you having some lady come to my job to serve me who is not a lawyer or a process server?"

### b. Laura Sues Plaintiff - the First Civil Action

17. On August 10, 2021, Laura filed a civil complaint against Plaintiff in the Los Angeles Superior Court, entitled *Laura Ruano v. Julie Goldberg, et al.*, Case No. 22VECV01054 (the "First Civil Action"). In the First Civil Action, Laura falsely alleged that Plaintiff had previously represented Laura in several prior legal matters and therefore could not engage in representation adverse to Laura by representing Luis in the Divorce Proceeding. The complaint in the First Civil Action alleged three causes of action against Plaintiff: (1) breach of fiduciary duty; (2) intentional interference with marital relations; and (3) intentional infliction of emotional distress. The second and third causes of action were also alleged against Luis Roberto Ruano II ("Robert"), Plaintiff's law clerk and Luis's son.

18. Among of the allegations Laura made in the complaint in the First Civil Action were: that Plaintiff represented to Laura she was her attorney (¶ 19); that Plaintiff provided Laura with legal advice (¶ 21); that Barone's gave Plaintiff discounts on food Plaintiff's purchases there (¶ 22); that Plaintiff performed a valuation of Barone's and obtained its trade secrets (¶ 22); that Plaintiff prepared a mediation contract for Laura (¶ 23); that Plaintiff prepared an arbitration agreement for Laura (¶ 23); that Plaintiff conducted a legal consultation with Laura (¶ 23); that Plaintiff ratified an attorney/client relationship with Laura and assured Laura that Plaintiff would handle all of Laura's legal needs (¶ 24); that Plaintiff billed Laura for legal services (¶ 26); that Plaintiff provided Laura with legal advice for meal break structuring (¶ 27); that Plaintiff defended Laura Ruano in a civil matter against a former employee (¶ 28); that Plaintiff assisted Laura in a separate civil matter against Luis's ex-wife (¶ 29); that Plaintiff directed Luis to sell his community property (¶ 36); that Plaintiff locked Laura out of her home (¶ 38); that Plaintiff has been Laura's attorney for several years (¶ 39); that Plaintiff directed

Robert (also a defendant in the First Civil Action) to stage an incident that would subject Laura to arrest (¶ 40); and that Plaintiff directed Robert to file a false police report against Laura (¶ 41).

19. None of the allegations were true. Each and every allegation Laura made in the First Civil Action was false. Plaintiff never committed any of the alleged wrongs, much less ever knew who Laura was.

### c. Laura Attempts to Exert Influence Wrongfully on Plaintiff and Luis.

20. On September 14, 2021, Laura directed her attorney in the First Civil Action to call Luis and tell Luis, "We can make this lawsuit go away if you are willing to work on your marriage." Luis replied, "Oh, let me see if I understand you correctly. You are telling me that this lawsuit will go away if I decide to work on my marriage?" Laura's lawyer replied, "Well there are many ways we can make this happen."

### d. Plaintiff Provides Proof to Laura She Never Represented Her.

21. On January 2, 2022, Plaintiff emailed Laura's attorney in the First Civil Action with evidence demonstrating that Plaintiff never represented Laura or never knew Laura. Plaintiff's email stated in part, "The allegations in the Complaint that I have given Plaintiff legal advice [¶ 21], billed for legal services [¶ 26], or represented Plaintiff in any capacity are completely false. It is clear that Plaintiff has acted primarily for a purpose other than succeeding on the merits of the claims sued upon and initiated her Complaint without probable cause and with malice. [] Your knowledge of the ongoing dissolution proceeding is evidenced by my client informing me that you contacted him on September 14, 2021 at 1:51 PM to tell him 'we can make this lawsuit go away if you are willing to work on your marriage.' I demand that Plaintiff dismiss me by end of business on Wednesday, January 12,

2022." Laura did not dismiss Plaintiff.

22. On February 18, 2022, Plaintiff filed a demurrer in response to Laura's complaint in the First Civil Action.

### e. Laura Files a Motion in the Divorce Proceeding to Disqualify Plaintiff as Counsel for Luis Alleging a Conflict of Interest.

23. On February 2, 2022, **a year after** litigating the Divorce Proceeding and **three months after** being presented with evidence in the First Civil Action that *Plaintiff never knew or provided any legal services whatsoever to Laura*, Laura filed a request for order (i.e., a motion in family law) in the Divorce Proceeding to disqualify Plaintiff as Luis's attorney.

24. Laura supported her motion in the Divorce Proceeding with declarations from both Laura and Thomas. Laura's declaration made the same false allegations against Plaintiff that she made in the complaint in the First Civil Action, including but not limited to, "Goldberg [Plaintiff in this action] provided legal advice, assistance and defended me in regards to a former employee's lawsuit [¶ 14];" "Goldberg was both my attorney and Petitioner's attorney [¶ 15];" and "Goldberg billed for her legal services [16]." Thomas's declaration made the same false allegations against Plaintiff as Laura's declaration.

25. On February 25, 2022, Laura and Thomas were served with subpoenas seeking to cross-examine them in connection with their declarations at the hearing of the motion to disqualify Plaintiff from representing Luis in the Divorce Proceeding.

26. After Laura was served with a subpoena, she contacted the police and filed a false police report against Plaintiff. After Thomas was served, he contacted the police and filed a second false police report against Plaintiff.

27. On March 9, 2022, Luis opposed Laura's motion, adding even more

PLAINTIFF'S FIRST AMENDED COMPLAINT
7

evidence (207 pages) that Plaintiff never knew Laura, much less represented her.

28. On March 21, 2022, Laura filed a reply brief in support of her motion to disqualify Plaintiff in the Divorce Proceeding, continuing to fabricate a preexisting attorney-client relationship with Plaintiff.

### f. The Court in the Divorce Proceeding Denies Laura's Motion to Disqualify Plaintiff.

29. On March 22, 2022, the court in the Divorce Proceeding heard oral argument on Laura's motion and Laura again continued to argue that Plaintiff previously represented her, despite the overwhelming evidence to the contrary Plaintiff had sent her. The court in the Divorce Proceeding denied Laura's motion to disqualify Plaintiff from representing Luis. The court stated, "What [] matters did she represent you? You can't just make a blanket statement" [] "I just don't see where there is a conflict" [] "The court doesn't speculate on broad statements" [] "[Ms. Goldberg's] office wasn't retained."

### g. Laura Files a Restraining Order Petition Against Plaintiff.

30. On March 9, 2022, Laura, along with Thomas, filed a petition for a civil harassment restraining order against Plaintiff, entitled *Ruano v Goldberg*, Los Angeles Superior Court Case No. 22VERO00392 (the "Restraining Order Case"). Thomas was listed as an additional protected person. The petition in the Restraining Order Case alleged, in pertinent part, that Plaintiff "on prior occasions had acted in a violent manner, verbally, and physically" and that Plaintiff had sent a man to Laura's place of employment "concealing a weapon (e.g., a handgun)" to be "robbed."

31. On March 9, 2022, the court denied a temporary restraining order in the Restraining Order Case, and scheduled the matter for a full hearing.

### h. Laura and Thomas File a Second Civil Complaint against Plaintiff.

32. On March 21, 2022, Laura and Thomas filed another civil action against Plaintiff, entitled *Monteleone v. Goldberg*, Los Angeles Superior Court Case No. 22VECV00402 (the "Second Civil Action"). Much as they had done in the Restraining Order Case, Laura's and Thomas's Second Civil Action alleged that Plaintiff sent a man with a gun to Laura's and Thomas's place of employment (Barone's) for a stick-up up robbery. The Second Civil Action alleged three causes of action against Plaintiff: (1) assault; (2) trespass; and (3) intentional infliction of emotional distress. *Id*.

### i. Laura Sends Luis a Text Message Stating Plaintiff Broke into Her Home and Robbed Her.

33. On March 29, 2022, Laura's and Thomas's home was burglarized. That same night, Laura and Thomas filed another false police report against Plaintiff. On March 31, 2022, Laura sent Luis a text message stating, "Just this week [Plaintiff] sent her guys to my house and robbed me."

### e. The Court Sustains in Part Plaintiff's Demurrer to the First Civil Complaint.

34. On July 8, 2022, in the First Civil Action, the court sustained Plainitff's demurrer to the second cause of action without leave to amend and overruled the demurrer first and third causes of action. The court's order stated in part, "Plaintiff's second cause of action for intentional interference with marital relations is not a recognized cause of action in this jurisdiction. Goldberg has identified authorities indicating that there was such a cause of action as 'alienation of affection' in this state at some point, but that the cause of action has been abolished. See [Cal.] Civ. Code, § 43.5(a). As to Plaintiff's second cause of action,

Defendants' demurrers are sustained without leave for sufficiency."

### f. Plaintiff Files an Anti-SLAPP Motion in the Second Civil Complaint.

35. On July 17, 2022, Plaintiff removed the Second Civil Action to this Court, Case No. 2:22-cv-04858-FMO-E.

36. On August 8, 2023, Plaintiff filed an anti-SLAPP motion to dismiss in response to the Second Civil Action, and four days later, on August 12, 2023, in direct response to Plaintiff's anti-SLAPP motion, Defendants voluntarily dismissed their Second Civil Complaint.

### g. Laura Dismisses Her Request for a Restraining Order.

37. After several months of litigation and Laura's and Thomas's refusal to dismiss their Restraining Order Action, at the final hearing counsel for Laura and Thomas made an oral motion to dismiss the matter with prejudice, making Plaintiff the prevailing party. *Krug v. Maschmeier*, 172 Cal.App.4th 796, 802 (2009) ("The normal rule is that when a plaintiff dismisses an action with prejudice, the defendant is considered the prevailing party").

### g. Plaintiff Files an Anti-SLAPP Motion in Response to Laura's Complaint in the First Civil Action.

38. On October 17, 2022, Plaintiff filed an anti-SLAPP motion to dismiss in response to Laura's complaint in the First Civil Action. In support of her anti-SLAPP motion, Plaintiff requested that the court take judicial notice of the court order in the Divorce Proceeding, which included a finding that Plaintiff never represented Laura.

39. On December 13, 2022, the court granted Plaintiff's anti-SLAPP motion and effectively dismissed Plaintiff from the First Civil Action. The court held that if Laura wanted to amend her complaint to name Plaintiff, Laura would need to seek

PLAINTIFF'S FIRST AMENDED COMPLAINT
10

leave of court.

40. On December 20, 2022, S. Martin Keleti, counsel for Plaintiff, asked Mr. Hanigan, counsel for Laura, whether Plaintiff would be named in the proposed third amended complaint. On December 27, 2022, Mr. Hanigan replied, "The third amended complaint will not name Ms. Goldberg as a defendant."

41. Thereafter Laura moved to amend her complaint and filed a proposed amended complaint omitting Plaintiff from the complaint. The motion for leave to amend was accompanied by a declaration by Mr. Hanigan stating, "Goldberg has been dropped as a defendant in the action, and all references to her have also been removed, in light of the Court's ruling on Goldberg's special motion to strike."

42. On March 28, 2023, the court held a hearing on Laura's motion for leave to file an amended complaint. During the hearing the judge told Mr. Hanigan that Plaintiff could not be named in the complaint again and that the court only would grant leave to file an amended complaint against Luis and Robert. Mr. Hanigan assured the court that Laura would not name Plaintiff in the third amended complaint if the court granted leave.

43. On April 5, 2023, Laura filed her third amended complaint in the First Civil Action naming only Luis and Robert.

### h. Laura Files a State Bar Complaint Against Plaintiff.

44. On or about August 2022, Laura filed a baseless California State Bar Complaint against Plaintiff.

### i. The Appeal and Cross-Appeal in the First Civil Action.

45. On December 13, 2023, when the trial court granted Plaintiff's anti-SLAPP motion, the court denied attorney fees to Plaintiff. Plaintiff's counsel argued that attorney fees are not discretionary when a party prevails on an anti-SLAPP motion

and the court must allow Plaintiff to file a motion for attorney fees. The court was unpersuaded and encouraged Plaintiff to take an appeal. Plaintiff did and Laura took a cross appeal.

46. On June 1, 2023, the trial court judge in the First Civil Action issued a minute order *sua sponte*, acknowledging its error in denying Plaintiff attorney fees on her successful anti-SLAPP motion, stating:

> "The Court has read and considered the Proposed Statement on Appeal, filed May 17, 2023, as to Defendant/Appellant Goldberg's appeal of this Court's December 13, 2022 minute order denying Goldberg's request for a hearing on attorney fees in connection with Goldberg's successful anti-SLAPP motion. The Court acknowledges its error in declining to schedule a hearing as to attorney fees for Goldberg, but lacks jurisdiction to modify the order pending appeal."

47. Laura was actively involved in bringing all three legal proceedings against Plaintiff: the First Civil Action, the Restraining Order Case, and the Second Civil Action. Thomas was actively involved in bringing two of them: the Restraining Order Case and the Second Civil Action. Both Laura and Thomas participated in Laura's unsuccessful motion to disqualify Plaintiff from representing Luis in the Divorce Proceeding.

48. All three lawsuits ended in Plaintiff's favor because Plaintiff has been dismissed from each of them on the merits.

49. The First Civil Action included a cause of action for intentional interference with marital relations, which the court dismissed after Plaintiff filed a demurrer arguing that the facts Laura alleged did not constitute a cause of action, because no such claim is cognizable under California law. "The law with reference to the effect

of a judgment following the sustaining of a demurrer was summed up by the Supreme Court in *Crowley v. Modern Faucet Mfg. Co.*, 44 Cal. 2d 321, 323: "(1) A judgment entered after a general demurrer has been sustained 'is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will accordingly, be a bar to a subsequent action alleging the same facts.'" *Sterling v. Galen*, 242 Cal. App. 2d 178, 182 (Ct. App. 1966).

50. Plaintiff was effectively dismissed from the First Civil Action pursuant to an anti-SLAPP motion and the court prohibited Laura from further naming Plaintiff as a defendant. Laura conceded that she would not further name Plaintiff as a defendant in the First Civil Action.

51. The court dismissed the Restraining Order Case with prejudice.

52. Laura and Thomas dismissed the Second Civil Action only in response to the anti-SLAPP motion. Plaintiff's counsel attempted to confer with counsel for Laura and Thomas counsel to dismiss the Second Civil Action, but Laura and Thomas refused to dismiss it. It was only once counsel for Laura and Thomas had the opportunity to read Plaintiff's anti-SLAPP motion that they realized that their complaint was untenable, since they sued Plaintiff for sending a process server to Laura's place of employment, which the litigation privilege clearly protects.

53. No reasonable person in Laura's or Thomas's circumstances would have believed that there were reasonable grounds to bring the legal proceedings against Plaintiff. In the First Civil Action, Laura had no reason to believe that Plaintiff had previously represented her in any capacity. Laura and Plaintiff had never met or spoken to one another. In the Restraining Order Case, Laura and Thomas did not reasonably believe that a man who came to serve them with subpoenas was sent by Plaintiff with a gun for a robbery. Laura and Thomas have been aware and involved in litigation with Plaintiff and Luis since February 2020. In the Second Civil

Action, the facts mirrored those of the Restraining Order Case.

54. Laura and Thomas only instituted these lawsuits to try and gain a civil advantage in the Divorce Proceeding against Luis and to annoy, harass and harm Plaintiff. This was Laura's and Thomas's primary purpose in initiating their lawsuits.

55. In each case, Plaintiff had to hire an attorney, S. Martin Keleti, to assist her in her defense. She paid Mr. Keleti attorney fees, paid costs, and endured the emotional distress and injury to her reputation because of the groundless allegations made in pleadings which are public records. *Sagonowsky v. More*, 64 Cal. App. 4th 122, 132 (1998).

56. Laura's and Thomas's conduct in initiating and litigation was a substantial factor in causing harm to Plaintiff.

57. The actions of Defendants were willful, intentional, wanton, malicious, and without justification, and Plaintiff is entitled to punitive damages according to proof at trial. Defendants intended their conduct to cause injury to Plaintiff, or they carried on their despicable conduct with a willful and conscious disregard of Plaintiff's rights, or Defendants subjected Plaintiff to cruel and unjust hardship in conscious of Plaintiff's rights, or Defendants' conduct constituted intentional misrepresentation of a material fact known to Defendants made with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

**PRAYER**

WHEREFORE, Plaintiff having set forth her claim for relief against Defendants respectfully prays that this Court grant the following relief against the

Defendants:

1. For consequential damages (both general and special) in an amount to be proven at trial, but no less than $1,000,000.00;
2. For punitive damages according to proof;
3. For prejudgment and postjudgment interest;
4. For costs of suit; and
5. For such other and further relief as the Court may deem just and proper.

Dated: August 4, 2023                               Respectfully Submitted,

**GOLDBERG & ASSOCIATES, P.C.**

*/s/ Julie A. Goldberg*
By: Julie A. Goldberg

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 4, 2023                               Respectfully Submitted,

**GOLDBERG & ASSOCIATES, P.C.**

*/s/ Julie A. Goldberg*
By: Julie A. Goldberg

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, the foregoing **PLAINTIFF JULIE ANN GOLDBERG'S FIRST AMENDED COMPLAINT FOR MALICIOUS PROSECUTION** is being electronically filed in the Court's Electronic Case Filing system ("ECF"); thereby upon completion the ECF system automatically generated a Notice of Electronic Filing ("NEF") as service through CM/ECF to registered e-mail addresses of counsel for parties of record in the case.

Dated: August 4, 2023                         /s/ *Christopher Fecliciano*
                                              Christopher Feliciano