**GOLDBERG & ASSOCIATES, P.C.**
JULIE A. GOLDBERG (SBN 235565)
14370 Ventura Boulevard
Sherman Oaks, California 91423
Telephone: (818) 999-1559
Email: ecf@goldbergimmigration.com

**KELETI LAW**
S. MARTIN KELETI (SBN 144208)
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, California 90212-1671
Telephone: (323) 308-8489
E-mail: s.martin.keleti@gmail.com

*Attorneys for Plaintiff Julie Ann Goldberg*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ANN GOLDBERG, an individual;<br><br>Plaintiff,<br><br>v.<br><br>LAURA RACHEL RUANO, an individual; and THOMAS MONTELEONE, an individual;<br><br>Defendants. | Case No.:  2:23-cv-02395-GW-AGRx<br>*Assigned for All Purposes to*<br>*Hon. George H. Wu*<br><br>**PLAINTIFF JULIE ANN GOLDBERG'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE STAY AND MODIFY SCHEDULING ORDER [DKT 208]** |

## **INTRODUCTION**

Defendants Laura Ruano and Thomas Monteleone now bring their <u>fourth</u> request to stay these proceedings—once again on an ex parte basis, and once again invoking the same physician's note previously offered to justify their last application. Although styled as a compassionate medical accommodation, the request is not based on any emergent or new condition. It is part of a repeated pattern of misrepresentation and procedural abuse. Notably, while claiming that Mr. Monteleone cannot participate in litigation for medical reasons, Defendants and their new counsel **filed and served a fourth civil complain**t against Plaintiff Julie Goldberg on May 15, 2025, in *Monteleone, et al. v. Goldberg*, No. 25STCV14280 (L.A. Super. Ct.)—a lawsuit based on the very same underlying dispute that has already been litigated and, in substantial part, resolved in Goldberg's favor. (See **Exhibit A**.)

This contradiction is disqualifying. In their ex parte application for a stay, filed on February 24, 2025, Defendants relied on the same doctor's letter now submitted again to argue that Mr. Monteleone was medically unable to participate in any legal proceedings. The Court granted the requested 90-day stay. Yet during that very period, Defendants hired new counsel, drafted a detailed civil complaint, and actively initiated and served a new lawsuit. At no point did they notify this Court of these developments. Their reliance on the identical medical justification in

the current request—without disclosing their intervening actions—constitutes a material omission and an affront to the integrity of the ex parte process.

This is not an isolated lapse. Both state and federal courts have already made serious findings bearing directly on Ms. Ruano's credibility and litigation conduct. In a June 7, 2024 ruling, Magistrate Judge Alicia G. Rosenberg of this Court found that Plaintiff Goldberg had made a prima facie showing that Ruano attempted to dissuade a witness in the family law proceedings and made knowingly false statements under oath. The Court concluded that Ruano's conduct warranted application of the crime-fraud exception to the attorney-client privilege, citing violations of both Penal Code §§ 136.1(a)(2) and 118(a). (See Dkt. 100 at 6, 10.)

Separately, *In Re Marriage of Ruano*, Los Angeles Superior Court ("LASC") Case No. 21VEFL00184, the LASC issued a Statement of Decision on August 14, 2024, expressly finding that Ruano violated the automatic temporary restraining orders ("ATROs") by secretly selling community property, failed to disclose settlement proceeds, and submitted sworn declarations the Court deemed "not credible." The court further found that her omission of material financial information negatively impacted her credibility and demonstrated a pattern of evasive and deceptive conduct. (See **Exhibit B**.)

In light of this record, Defendants' latest request for emergency relief cannot be viewed as a sincere invocation of the Court's equitable power. Ex parte relief is

governed by strict standards in this District. As established in *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) and *Trohimovich v. Commissioner*, 776 F.2d 873 (9th Cir. 1985), a party seeking ex parte relief must demonstrate not only irreparable harm but also propriety in bypassing the regular motion process. Neither is present here. The facts make clear that this is not a case of medical incapacity or emergent harm—it is a case of strategic delay, forum abuse, and serial litigation by parties determined to relitigate issues they have already lost.

For the reasons set forth herein, the Court should deny Defendants' ex parte application to stay the proceedings. Defendants' continued invocation of a medical justification for avoiding this litigation—while simultaneously initiating and prosecuting duplicative proceedings against Plaintiff in state court—undermines any claim of good faith and reflects precisely the kind of vexatious litigation conduct the Ninth Circuit has condemned. See *Trulis v. Barton*, 107 F.3d 685, 692–93 (9th Cir. 1995) (reversing denial of sanctions where counsel pursued a legally foreclosed claim, misrepresented client authority, and vexatiously multiplied proceedings in violation of 28 U.S.C. § 1927). In the alternative, if any stay is granted, it should be conditioned upon the immediate disclosure of all parallel litigation activity, the posting of an appropriate bond, and the imposition of any

additional protective measures necessary to safeguard Plaintiff's rights and deter

further abuse of the judicial process.

## DEFENDANTS HAVE ABUSED THE EX PARTE PROCESS AND MISLED THE COURT

This is Defendants' second ex parte application for a stay, following two

stipulated extensions and one prior ex parte request, all relying on the same

physician's declaration attesting that Defendant Thomas Monteleone cannot

participate in litigation due to medical stress. Yet during the period in which

Defendants claimed total incapacity, they retained new counsel and filed a fourth

civil complaint in *Monteleone et al. v. Goldberg*, No. 25STCV14280 (filed May 15,

2025), based on the same operative facts and legal theories already litigated in state

court.

This conduct flatly contradicts Defendants' prior representations to this Court

and confirms that the claimed basis for stay relief is pretextual. The present ex parte

application before this Court fails to disclose the new lawsuit, fails to explain how

new litigation could be initiated while Defendants were supposedly medically

incapacitated, and fails to reconcile their inconsistent conduct across forums. The

omission of these material facts undermines the integrity of the application and

warrants denial.

As the court recognized in *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), "Ex parte motions are rarely justified. . . . These hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system." The unfairness is especially acute when, as here, the moving party seeks emergency relief while concealing facts that directly contradict their asserted grounds.

Moreover, *Mission Power* held that ex parte relief is proper only where the moving party shows both that its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that it "is without fault in creating the crisis that requires ex parte relief." *Id*. at 492–93. Defendants cannot make either showing. The alleged crisis is of their own making, and their ongoing prosecution of parallel litigation directly refutes the claim that immediate participation in this action would cause irreparable harm. The Court should not permit Defendants to continue abusing the ex parte process to delay adjudication while actively litigating the same dispute elsewhere. Such conduct reflects gamesmanship, not good cause.

## DEFENDANTS' MISREPRESENTATIONS TO THIS COURT JUSTIFY DENIAL OF EX PARTE RELIEF

Defendants' latest ex parte application is not merely procedurally defective; it is premised on a factual misrepresentation that fatally undermines its credibility and

demonstrates a pattern of procedural manipulation. Specifically, while Defendants assert in this Court that Mr. Monteleone remains medically incapacitated and must avoid stress for 90 days, the same parties appeared before the LASC just six days earlier, on May 28, 2025, and made no mention of any such incapacity. Instead, in that ex parte application—filed by newly retained counsel Michael Labrum—Plaintiff sought to continue a pending hearing solely on the grounds that new counsel needed time to prepare. (See **Exhibit C**).

This striking omission reveals one of two possibilities: either Monteleone's condition was not, in fact, preventing participation in legal proceedings, or the state court was misled. Either conclusion severely damages Defendants' credibility before this Court and warrants denial of emergency relief. As the Ninth Circuit made clear in *Trulis v. Barton*, misconduct that undermines the integrity of judicial proceedings—such as continuing to litigate claims already barred by a court order—warrants serious scrutiny. 107 F.3d 685, 693–94 (9th Cir. 1995). There, the Court found that deliberate litigation conduct in defiance of a prior release and court order was not only sanctionable but also indicative of bad faith. Similarly, when litigants strategically withhold material facts from one tribunal while seeking emergency relief from another, such conduct subverts the integrity of the judicial process and should not be countenanced.

Moreover, Defendants retained new counsel and, on May 15, 2025, initiated a

new fourth civil complaint against Plaintiff Goldberg, asserting claims based on the

same events underlying this action and the first civil action (Case No.

21VECV01054, LASC). (See **Exhibit A**). This duplicative filing underscores their

continued litigation activity during the very period in which they claim Mr.

Monteleone is too unwell to participate in proceedings before this Court.

Such conduct is inconsistent with a claim that Defendant Thomas Monteleone

is too medically compromised to litigate. It also confirms that any hardship claimed

in this Court is self-inflicted. As the Central District has warned, ex parte relief is

not available to parties who create their own crisis: "Ex parte applications are not

intended to save the day for parties who have failed to present requests when they

should have." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

Moreover, This conduct demonstrates that Defendants are capable of

initiating and prosecuting new litigation when it suits them, and belies any

suggestion that health concerns prevent participation in these proceedings. The

record establishes a pattern of strategic delay, forum-shopping, and

misrepresentation. On this basis alone, Defendants' application should be denied.

## **CONCLUSION**

Defendants' ex parte application should be denied. Their conduct—filing a

new civil action while claiming incapacity in this Court—demonstrates a pattern of

abuse that undermines the integrity of these proceedings. Alternatively, if any stay

is granted, it should be conditioned upon full disclosure of all parallel litigation, the

posting of an appropriate bond, and any other protective measures necessary to

preserve Plaintiff's rights.

Dated: June 4, 2025                    **GOLDBERG & ASSOCIATES**

                                       _/s/ Julie Goldberg_
                                       By: Julie Ann Goldberg
                                       _Plaintiff_

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and a party to this action. I am a resident in the county of Los Angeles, State of California. My business address is 14370 Ventura Boulevard, Sherman Oaks, CA 91423.

On June 4, 2025, I served true copies of the following documents described as:

**PLAINTIFF JULIE ANN GOLDBERG'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE STAY AND MODIFY SCHEDULING ORDER [DKT 208]**

on the interested parties in this action as follows:

Jonathan L. Gerber, Esq. (SBN 251219)
MILLER MILLER GERBER LLP
18301 Von Karman Ave., Suite 950
Irvine, CA 92612
Telephone: (714) 450-3800
Email: jgerber@mmg-llp.com
*Attorneys for Defendants*

**[X] BY ELECTRONIC SERVICE**: Pursuant to CCP § 1010.6(a)(4), I caused such document(s) to be electronically served, at the following email address: jgerber@mmg-llp.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 4, 2025 in Los Angeles, California.

_____
Christopher Feliciano

# EXHIBIT A

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/15/2025 2:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**LAW OFFICES OF MICHAEL LABRUM**
**MICHAEL D. LABRUM, SBN 284403**
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
Michael@LabrumLaw.com
LabrumLaw.com
Phone: (805) 267-1171

Attorneys for Plaintiffs
Laura Monteleone and Thomas Monteleone

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LAURA R. MONTELEONE (formerly known as Laura Ruano) and THOMAS A. MONTELEONE,<br><br>               Plaintiffs,<br><br>vs.<br><br>JULIE ANN GOLDBERG, and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case No.: 25STCV14280<br><br>**COMPLAINT FOR COMPENSATORY (CIVIL CODE SECTION 3333) AND PUNITIVE (CIVIL CODE SECTION 3294) DAMAGES - MALICIOUS PROSECUTION OF CIVIL ACTION**<br><br><br>**[JURY TRIAL DEMANDED]** |

NOW COMES Plaintiffs LAURA R. MONTELEONE (formerly known as Laura Ruano) and THOMAS A. MONTELEONE (collectively referred to as "PLAINTIFFS" hereafter) respectfully alleging and complaining of malicious prosecution supported by the

identified ultimate facts against the Defendants JULIE ANN GOLDBERG and DOES 1 through 10 (collectively referred to as "DEFENDANTS" hereafter).

# INTRODUCTION

1.     This action arises from the DEFENDANTS' malicious prosecution of a civil cross-complaint filed, without probable cause, against PLAINTIFFS in the underlying civil action titled as *Ruano v. Goldberg* - Los Angeles Superior Court, Case No. 21VECV01054.

# PARTIES AND JURISDICTION

2.     Plaintiff LAURA R. MONTELEONE, formerly known as LAURA MONTELEONE ("LAURA") is and has been a resident of the City of Encino, County of Los Angeles, California.

3.     Plaintiff THOMAS A. MONTELEONE is and has been a resident of the City of Encino, County of Los Angeles, California.

4.     Defendant JULIE ANN GOLDBERG is an active California licensed attorney doing business in the County of Los Angeles, California, at all times indicated herein, with the principal place of business located at 14370 Ventura Blvd., Sherman Oaks, California 91423.

5.     PLAINTIFFS do not know the true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 10, inclusive.  These DOE Defendants are sued pursuant to the provisions of Code of Civil Procedure Section 474.

PLAINTIFFS are informed and believes, and on that basis allege, that each Doe Defendant was in some manner responsible, participated in, or contributed to the matters and things of which PLAINTIFFS complain herein and, in some fashion, has legal responsibility, therefore.  If PLAINTIFFS determine the exact nature and identity of such Doe Defendants responsible for participation in and contribution to the matters herein alleged, PLAINTIFFS will seek to amend the complaint to add the DOE Defendant.

6.    To the extent contrary to the allegations contained in this Complaint, and as an alternative theory, PLAINTIFFS are informed, believe and thereon allege, that at all times mentioned herein each DEFENDANT was the agent and/or employee of the other DEFENDANT and was at all times acting within the scope of such agency and/or employment, and actively participated in and vicariously, or subsequently ratified and adopted, or both, each and all of the acts, conduct and/or omissions alleged, with full knowledge of all of the facts and circumstances, including, but not limited to, full knowledge of each and all of the violations of PLAINTIFFS' rights and interests.

7.    All allegations in this Complaint are based on information and belief, and these allegations are likely to have evidentiary support after a reasonable opportunity for further discovery and investigation.

/ / /

/ / /

/ / /

/ / /

**FACTUAL DISCUSSION**

8.      The allegations of paragraphs 1 through 7 are herein alleged and incorporated by reference.

9.      On or about April 19, 2022, DEFENDANTS filed a meritless cross-complaint against PLAINTIFFS in the Superior Court of Los Angeles County, California (Case No. 21VECV01054) demanding "no less than $1,000,000" in compensatory damages and "no less than $1,000,000" in punitive damages.

10.      On or about April 2, 2024, DEFENDANTS voluntarily dismissed said action against PLAINTIFFS.

11.      DEFENDANTS acted without probable cause in filing the meritless cross-complaint. DEFENDANTS filed the cross-complaint in malicious retaliation for PLAINTIFFS bringing suit against DEFENDANTS. DEFENDANTS did not honestly and reasonably believe that there were grounds for the action because the allegations against PLAINTIFFS were false.

12.      DEFENDANTS acted maliciously and with ill will in bringing the above cross-complaint against PLAINTIFFS for the improper purpose and desire to annoy, harass, and cause PLAINTIFFS to incur substantial legal expenses defending against the meritless cross-complaint.

13.      As further proximate result of the meritless cross-complaint by DEFENDANTS, PLAINTIFFS incurred fees and costs in the sum of $200,000.

14.     DEFENDANTS' acts were willful, wanton, malicious, and oppressive in that DEFENDANTS were motivated by ill will toward PLAINTIFFS. Plaintiff Laura Monteleone had alleged that Defendant Julie Goldberg had previously provided legal representation to PLAINTIFFS and subsequently provided conflicted representation to her ex-spouse. Plaintiff Laura Monteleone filed a lawsuit for breach of fiduciary duty against Defendant Julie Goldberg due to the conflict and filed a state bar complaint against Defendant Julie Goldberg for the conflicted representation. Defendant Julie Goldberg, with ill will and hatred toward Plaintiff Laura Monteleone, maliciously retaliated against PLAINTIFFS due to Plaintiff Laura Monteleone exercise of protected free speech by filing the meritless cross-complaint seeking "no less than $1,000,000" in compensatory and punitive damages. These acts by Defendant Julie Goldberg justify the awarding of punitive damages.

15.     Notably, DEFENDANTS, without merit and with ill will, sued Plaintiff Laura Monteleone's family members as part of the cross-complaint, including Plaintiff Thomas Monteleone. Plaintiff Thomas Monteleone had nothing to do with the conflicted representation dispute between Defendant Julie Goldberg and Plaintiff Laura Monteleone, yet Defendant Julie Goldberg maliciously sued Thomas Monteleone without probable cause in order to further annoy, harass, and cause financial harm to PLAINTIFFS. This is further proof of DEFENDANTS ill will and hatred toward PLAINTIFFS as Defendant Julie Goldberg sued, without merit and with ill will, Plaintiff Laura Monteleone's family members

in order to harass, annoy, and cause Plaintiff Laura Monteleone's family members to incur

legal expenses defending against meritless cross-complaint claims.

### FIRST CAUSE OF ACTION FOR MALICIOUS PROSECUTION

16.    The allegations of paragraphs 1 through 15 are herein alleged and

incorporated by reference.

17.    DEFENDANTS were actively involved in bringing the lawsuit against

PLAINTIFFS by filing of the cross-complaint against PLAINTIFFS.

18.    DEFENDANTS' lawsuit ended in PLAINTIFFS favor when

DEFENDANTS dismissed their cross-complaint against PLAINTIFFS.

19.    No reasonable person in DEFENDANTS' circumstances would have

believed that there were reasonable grounds to bring the lawsuit against PLAINTIFFS.

20.    DEFENDANTS acted primarily for a purpose other than succeeding on the

merits of the claim.

21.    PLAINTIFFS were harmed by DEFENDANTS meritless and malicious

cross-complaint as PLAINTIFFS incurred substantial legal expenses to defend against the

meritless cross-complaint.

22.    DEFENDANTS conduct was a substantial factor in causing PLAINTIFFS'

harm.

23.    DEFENDANTS' acts were willful, wanton, malicious, and oppressive in that

DEFENDANTS were motivated by ill will toward PLAINTIFFS.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment by a JURY TRIAL on the malicious prosecution cause of action and recovery of all damages claimed herein, including all economic, non-economic, and punitive damages.  Specifically, PLAINTIFF prays for judgment against DEFENDANTS and DOES 1-10, and each of them, as follows:

1. For compensatory damages to be determined at trial;.

2. For all special, general, and consequential damages, according to proof;

3. For pre-judgment and post-judgment interest at the legal rate;

4. For exemplary damages to be determined at trial; and

5. For other and further relief as this Court may deem just and proper.


Dated: May 12, 2025                                    **LAW OFFICES OF MICHAEL LABRUM**


_____
                                       Michael Labrum, Esq.
                                       Attorneys for PLAINTIFFS

# EXHIBIT B

FILED
Superior Court of California
County of Los Angeles

AUG 1 4 2024

~~David W.~~Slayton, Executive Officer/Clerk of Court

By: E. Martinez, Deputy

**Marriage of Ruano**
**21VEFL00184**
**Statement of Decision re: Bifurcated Issue of Attorney Fees and Costs**

## Background

Petitioner filed the Petition for Dissolution of Marriage on February 16, 2021. It is uncontested that the parties' date of marriage was January 10, 2016. The parties disagreed as to the date of separation; Petitioner contended it was June 23, 2020 and Respondent contended it was February 17, 2021. The Parties have no minor children. On February 17, 2021, Petitioner served Respondent with his preliminary declaration of disclosures (PDDs) and a proposed settlement agreement which Respondent did not accept. Respondent filed an initial Response to the Petition on March 17, 2021, identifying the date of separation as June 23, 2020 and seeking spousal support as well as other orders. She filed an Amended Response on April 20, 2021 seeking Legal Separation, identifying the date of separation as February 17, 2021, seeking confirmation of separate property located at 15645 Odyssey Drive, Granada Hills, California 91344 ("Odyssey Property") and division of alleged community property located at 7731 Paso Robles Avenue, Van Nuys, California 91406, as well as other orders. On February 5, 2022, Respondent served her PDD. Both parties exchanged their FDD's (see Declarations re: Service of Final Declaration of Disclosure filed 4/24/23 (Respondent) and 4/27/23 (Petitioner).

On March 23, 2022, Petitioner filed an Order to Show Cause ("OSC") for contempt against Respondent for selling the Odyssey Property on May 5, 2021 in violation of the ATROS. The contempt trial was continued several times, once at the request of both counsel for time to finalize a judgment based on the alleged agreement of the parties (see 9/6/22 Minute Order) and once over Respondent's objection due to the unavailability of Petitioner's counsel (see 11/28/22 Minute Order). Ultimately, at the January 5, 2023 hearing, Petitioner withdrew the OSC (see 1/5/23 Minute Order).

Respondent filed three pendente lite RFOs: one to disqualify Petitioner's attorney as counsel (see RFO filed 2/2/22), another for attorney fees and costs/property retrieval (see RFO filed 2/2/22), and another for bifurcation of marital status (see RFO filed 10/14/22). All three were denied. Respondent also filed a still-pending civil complaint against Petitioner, Petitioner's former counsel and Petitioner's son, (Ruano v. Goldberg, et al. LASC Case No. 21VECV01054) and a request for a restraining order against Petitioner's former dissolution of marriage counsel (Ruano v. Goldberg, LASC Case No. 22VERO00392) which was dismissed at Respondent's request on August 12, 2022. Respondent alleges that Petitioner's former counsel "sued Respondent in two separate lawsuits outside of this family law case for $3 million, plus punitive damages, which has greatly complicated this matter." One of these alleged lawsuits is actually a counterclaim filed in Case No. 21VECV01054 which was initiated by Respondent. Per the parties' May 13, 2024 stipulation, the other appears to be a still-pending federal court case (2:23-cv-02395-GW-AGR) about which this court has little information.

This matter was previously set for trial on June 5, 2023 before Commissioner Marilyn Mordetzky. Petitioner's former counsel did not appear, alleging she was having medical issues. The trial was reset for June 6, 2023. Petitioner's former counsel again did not appear and trial was reset for August 11, 2023. On August 8, 2023, Petitioner filed a Verified Statement of Disqualification against Commissioner Mordetzky. On August 17, 2023, Commissioner Mordetzky recused herself and transferred the case to Pasadena. Petitioner filed an RFO to reopen discovery which was denied on January 18, 2024. The case was then referred to Stanley Mosk for a Trial Readiness Conference which took place on January 24, 2024. Petitioner's trial counsel substituted in on April 11, 2004. There was no <u>Borson</u> motion filed by Petitioner's former counsel prior to the substitution. A long cause trial in Department 35 took place on May 13-16 and May 20, 2024.

This court issued detailed Pretrial Orders on April 17, 2024 with which neither party fully complied. For example, the parties did not file a joint stipulation about authenticity and/or admissibility of exhibits prior to the commencement of the trial. Petitioner did not file his updated Income and Expense Declaration or Witness List timely; both were filed on the first scheduled day of trial, May 13, 2024. Neither party brought copies of credit applications for the last two years to the trial. Petitioner did not bring copies of his current tax returns to the trial. Respondent's <u>Keech</u> Declaration was not complete; for example, as was pointed out by the court on the first day of trial, it did not identify the number of hours and amount of fees attributable to each category of tasks for which fees were being sought.

The Pretrial Orders state, "**FAILURE TO COMPLY WITH ANY OF THESE ORDERS WITHOUT GOOD CAUSE OR SUBSTANTIAL JUSTIFICATION MAY RESULT IN THE IMPOSITION OF SANCTIONS, INCLUDING WITHOUT LIMITATION WITNESS PRECLUSION ORDERS, EXHIBIT PRECLUSION ORDERS, ISSUE PRECLUSION ORDERS, EVIDENCE PRECLUSION ORDERS, MONETARY SANCTIONS, OR ANY OTHER SANCTION AUTHORIZED BY LAW AS THE COURT DEEMS APPROPRIATE UNDER THE CIRCUMSTANCES. SEE CODE OF CIVIL PROCEDURE §§ 128, 177.5; FAMILY CODE §§ 271, 2450, 2451; CALIFORNIA RULE OF COURT §§ 5.14, 5.83"** (emphasis in original).

On the first scheduled day of trial, May 13, 2024, the parties met and conferred and reached various stipulations about admissibility and authentication of trial exhibits which were memorialized in a written stipulation. They agreed that the issue of attorney fees and costs would be bifurcated and handled via declaration after the balance of the issues had been adjudicated. They also agreed that the community portion of the 401K would be divided equally pursuant to a QDRO, both parties to cooperate promptly with the process and equally share the cost. They stipulated that the total amount of mortgage principal paid down during the marriage on the former marital residence using Petitioner's Date of Separation was $26,131.10 and using Respondent's Date of Separation was $30,331.01.

Petitioner served a Notice to Appear and Produce, and the parties disputed its
enforceability.  The court did not order production of the items listed in Petitioner's
Notice to Appear and Produce except to the extent that the items requested (e.g. credit
applications, tax returns) were required to be produced by both parties pursuant to the
local rules.  There was no noticed motion by Petitioner regarding production of
requested items as set forth in CCP 1987(c).  The court found the Notice to Produce
was drafted broadly, in the style of a Request for Production of Documents, and
therefore insufficiently exact or specific to comply with CCP 1987(c).

No court reporter was present for the trial.  Counsel were ordered to meet and confer
with regard to a Settled Statement as to the testimony given on each day and to bring
their written stipulations thereupon to court on the following day.  In a few instances
where the parties disagreed as to the language of the settled statement, the court
resolved the dispute.  Extenuating circumstances precluded counsel from timely
completing all of the Settled Statements; therefore, the court ordered the parties to meet
and confer and file all outstanding Settled Statements no later than May 31, 2024.  See
May 20, 2024 Minute Order.  No additional Settled Statement was ever filed in
compliance with the court's order.[1]

The court issued a Tentative Statement of Decision on the issues other than Attorney
Fees and Costs on June 13, 2024 which subsequently became final.

**Orders Regarding Adjudication of the Bifurcated Issue of Attorney Fees and
Costs**

The Court's Statement of Decision contains the following orders regarding trial on the
bifurcated issue of attorney fees and costs:

> "A trial brief **in the form of a proposed statement of decision**[2] on the
> bifurcated issue of attorney fees and costs; an updated Income and Expense
> Declaration with all lines completed even if the answer if $0, all required
> attachments, and the attorney fees portion fully completed and signed by
> counsel; and a Keech declaration attaching fully completed forms FL-319 and
> Form FL-158 as well as copies of supporting billing statements shall be served
> and filed with the court no later than July 15, 2024.  The Keech Declaration shall
> provide the court with sufficient information about the attorney's hourly billing
> rate; the nature of the litigation; the attorney's experience in the particular type of
> work demanded; the fees and costs incurred or anticipated; and why the
> requested fees and costs are just, necessary, and reasonable. It shall identify the

---

[1] Petitioner's counsel alleges that he "prepared a Settled Statement as ordered by this Court and provided same to
opposing counsel for approval. Approval never arrived, and Respondent made it clear that she did
not intend to incur additional fees for Settled Statements. In that Petitioner does not intend to appeal
this Court's decision, Petitioner did not make further efforts to cajole cooperation from Respondent." Declaration of
Joel S. Seidel filed July 15, 2024 at page 5, paragraph 15.

number of hours and amount of fees attributable to each category of tasks for which fees are being sought.  Any additional pleadings responding to the other party's submission shall be served and filed with the court no later than July 29, 2024.  **Any request for relief relating to attorney fees and costs not specifically identified in the trial brief on the bifurcated issue of attorney fees and costs shall be deemed waived.  Untimely filings will not be considered absent extraordinarily good cause shown . . .** Trial on the bifurcated issue of attorney fees and costs is set for August 29, 2024 at 8:30 am for the sole purpose of announcing the court's ruling regarding attorney fees and costs if a tentative statement of decision on the issue of attorney fees and costs has not previously been issued.**"**

Both parties filed pleadings and Income and Expense Declarations in a timely fashion. However, only Respondent complied with the court's order as to the format of the pleading, specifically, "a trial brief in the form of a proposed statement of decision." Respondent once again did not comply with the court's order as to the contents of the Keech Declaration, specifically, "The Keech Declaration shall provide the court with sufficient information about . . . why the requested fees and costs are just, necessary, and reasonable. It shall identify the number of hours and amount of fees attributable to each category of tasks for which fees are being sought."  Respondent's June 15, 2024 Income and Expense Declaration identifies the source of attorney fees and costs paid to date as "loans" but does not list any attorney fee loans as debts in Paragraph 14, page 3.

Both parties' submissions regarding attorney fees and costs included declarations which were replete with improper argument, statements which lacked foundation, and statements subject to other evidentiary objections.

## RESPONDENT'S REQUEST FOR NEED-BASED ATTORNEY'S FEES

Petitioner is not seeking need-based attorney fees and costs.  Respondent is seeking need-based attorney fees and costs as well as sanctions per Section 271.  The court knows in considering a need-based fee award it "shall ensure that each party has access to legal representation," including early in the proceedings "to preserve each party's rights." The court "shall" make an order if all requirements of section 2030 are met.

As explained below, the court finds the requirements of section 2030 are not met and denies Respondent's request for attorney's fees under Family Code section 2030.

For a fee award to be granted, these elements must be met:

1. **The court must determine whether a disparity exists in ability to pay for, and access to funds to retain, counsel. This element has been met. In so determining, the court has considered the parties' access to funds, ability to pay, income and needs.** Petitioner does have some ability to pay. He has

more resources than the payee. The court previously found that Petitioner makes
$12,692 per month in gross salary and wages and his reasonable needs are
approximately $9,927 per month. The court previously found that Respondent
makes $5,384.63 in monthly salary per her Income and Expense Declaration
filed on May 7, 2024. Per her testimony on May 16, 2024, her father pays for her
health insurance in the approximate monthly amount of $500 and also pays for
her car insurance in a monthly amount she does not know.  Petitioner's expenses
are approximately $9,900 per month; Respondent's are $5,482. Considering
Petitioner's reasonable expenses, including reasonable litigation costs, he does
have sufficient income to pay some contributory share (though not all) of
Respondent's requested fees and costs.

As to the obligations and assets, including each party's separate property, the
court previously found as follows.

> "Petitioner has non-liquid real and personal property worth approximately
> $630,000, approximately $41,000 in cash and checking accounts, and
> approximately $27,234 in consumer and other debt.  Respondent claims
> to have no assets, although she admitted having sold the Odyssey
> Property in 2021; in contrast to prior statements in her April 5, 2022
> declaration ("I obtained the property in 2011 which was five years before
> Petitioner and I were even married. At the time of purchase, my father . . .
> assisted me by providing the down payment and the closing costs for the
> property"), she testified that the Odyssey Property really belonged to her
> father, and she did not receive "a penny" of the sales proceeds. The court
> did not find this portion of Respondent's testimony credible, especially in
> light of her prior inconsistent statements under oath.  It notes that
> Respondent's 2020 U.S. Individual Income Tax Return lists the Odyssey
> Property as her address, and both her 2020 and 2021 Returns and claim
> home mortgage interest as an itemized deduction on Schedule A.
> Exhibits 12 and 13.  It further notes that pursuant to Exhibit 18, the May
> 2021 Grant Deed for the condominium, the grantor was identified as
> "Laura Ruano, a married woman dealing with her sole and separate
> property, who acquired title as Laura Monteleone, a married woman as
> her sole and separate property, and Thomas Monteleone, an unmarried
> man, as Joint Tenants."  Respondent has approximately $40,000 in credit
> card debt, a portion of which existed as of the date of separation and is
> therefore being divided equally between the parties.  Respondent acquired
> a BMW with a monthly payment of $806.76 and balance owing per her
> May 7, 2024 Income and Expense Declaration of $49,591.45.  During her
> testimony, Respondent admitted she has received settlements from auto
> accidents, including a recent settlement check for $6,000, which are not
> listed on her Income and Expense Declarations.  Her omission of this
> information and her explanation that it was excluded because the funds
> were received "after separation" negatively impacted her credibility.

08/15/2024

Respondent will receive her share of the community interest in Petitioner's
401K."

**The court finds that Petitioner is able to pay for his legal representation and
make a contributive share towards Respondent's.** Even assuming Petitioner is
able to pay some contributive share, however, the other elements required for a fee
award have not been met, as explained below.

2. **The court must determine whether the requesting party's fees and costs of
   maintaining or defending the proceeding are reasonably necessary.**

   **It finds that Respondent has not presented sufficient competent,
   admissible evidence to support such a finding. To the contrary, the
   evidence before the court supports the conclusion that the requesting
   party's fees and costs of maintaining or defending the proceeding are not
   reasonably necessary.**

   In making this determination, the court has considered several factors:

   a. The litigation's nature and difficulty and its intricacies and importance. This
      case involves relatively simple, typical, straightforward issues regarding
      date of separation, spousal support, and division of property. The parties
      do not have widely divergent positions regarding most of the facts
      surrounding these issues. Extensive discovery was not necessary. Some
      basic investigation and assistance from experts in calculating a Moore-
      Marsden analysis was necessary. Based on the nature and difficulty of the
      litigation, highly skilled legal training and ability in litigating the case were
      not necessary.

   b. The amount involved in the case was not substantial relative to the fees
      expended, although the issues were understandably both emotionally and
      financially significant to the parties. This case involved a short-term
      marriage without minor children in which both parties were self-supporting.

      The court notes that at a January 5, 2023 hearing, the transcript of which
      is attached as Exhibit 25 to the Declaration of Julie Goldberg filed July 15,
      2024, Respondent's counsel stated: I'M FINE WITH SETTING IT FOR
      TRIAL; I'M FINE WITH THE SETTLEMENT CONFERENCE. THE
      INTERESTING THING ABOUT THIS CASE IS I'M A PART OF THE
      FAMILY LAW CASE AND, RIGHT NOW, WE'RE JUST TRYING TO
      DIVIDE UP THE ASSETS. AND THE PARTIES HAVE ESSENTIALLY
      AGREED THAT THERE'S NOT MUCH TO DIVIDE -- SHORT-TERM
      MARRIAGE, PROPERTIES BOUGHT BEFORE MARRIAGE.
      AND, REALLY, I THINK ALL WE'RE FIGHTING OVER IS, YOU KNOW,
      THEY WANT ATTORNEYS' FEES AND THAT'S WHY WE'RE GOING TO
      TRIAL. SO, IF WE'RE GOING TO GO TO TRIAL SO THEY CAN GET

ATTORNEYS' FEES, FINE. BUT THAT'S REALLY WHAT THIS CASE IS
ABOUT, AT THIS POINT IN TIME, IS THE OTHER SIDE WANTING TO
PUNISH MY CLIENT BY OBTAINING ATTORNEYS' FEES."

c. Given the simple, typical, straightforward nature of the issues in dispute,
this is not a case in which the attorney skill required was particularly high.

d. Respondent's attorney's efforts have been predominately unsuccessful
when the results are compared to the litigation costs.  For example,
Respondent did not prevail on the date of separation, her reimbursement
claims, her claims for permanent spousal support, her claims for
retroactive temporary spousal support, or her effort to divide the 401K
other than in-kind via a QDRO.  Although it has considered the results, the
court acknowledges that it does not apply a prevailing party theory.

e. The attorney's training and experience in family law. Respondent's
counsel has eight years of experience in family law.  He is not a certified
family law specialist. His rate is $300 per hour in this case, which the court
determines is reasonable.

f. The court finds that a material portion of the work Respondent expended
in this litigation was not reasonable. She took numerous positions that
were not reasonably supported in law or fact, as discussed in detail below.
Litigation of these unsupported positions took up a substantial amount of
court time.

g. The information provided by Respondent is not sufficient to permit the
court to quantify with specificity her reasonable fees and costs.

A <u>Keech</u> declaration should carefully itemize the work performed with
sufficient clarity so that a court can determine whether the fee request is
reasonable. This is especially important when litigation involves several
issues and proceedings. In short, a <u>Keech</u> Declaration must provide the
Court sufficient information regarding why the requested fees and costs
are just, necessary, and reasonable, identifying the number of hours and
amount of fees attributable to each category of tasks for which fees are
being sought.

Respondent's current <u>Keech</u> declaration, like her initial one, fails to identify
the number of hours and amount of fees attributable to each category of
tasks for which she is seeking fees.

Petitioner argues persuasively,

"Regarding Mr. Bowen's Keech Declaration, this Court observed at
trial that as drafted it was not sufficient. Now Mr. Bowen has filed

essentially the same document with the same deficiencies. Mr. Bowen's Keech Declaration does not provide this Court with information regarding the nature of the litigation, his experience in handling this type of litigation (although he does discuss his background to some extent), or why the fees incurred are reasonable, and the specific amount sought for each category of tasks. Nor does the fee declaration carefully itemize the work performed with sufficient clarity so that a court can determine whether the fee request is reasonable. Regarding whether Family Code section 271 fees are appropriate, Mr. Bowen's Declaration is silent. In short, Mr. Bowen's Keech Declaration is conclusory, listing generic tasks that could be applied to virtually any generic case. Based on this fee Declaration, this Court should not award attorney fees and costs for Respondent."

3. **Finally, the court must consider whether its apportionment of the overall fees and costs is "just and reasonable": a) whether its award is sufficient, to the extent practical, to enable each party to present their case adequately, and b) how to apportion the fees and costs based on the parties' relative circumstances applying relevant factors listed in Family Code section 4320. Based on this analysis, and considering the totality of the circumstances, the court concludes Respondent has the ability to present her case adequately without a fee award and that it is just and reasonable under the totality of the circumstances for her to bear her own fees and costs.** In addition to the factors discussed above, the court considered these additional factors listed in Family Code section 4320:

The respective obligations and assets of the parties support the court's conclusion. The court did not find Respondent's testimony about her assets and obligations to be credible, and notes that she sold property in violation of the ATRO's and failed to disclose settlement proceeds as required.

The balance of hardships to the parties supports the court's conclusion. Specifically, the court considered that Respondent has 25 more years before she reaches ordinary retirement age of 65, and Petitioner has 9.

The earning capacity of Respondent supports the court's conclusion. Respondent testified at trial that she prefers to continue to work for her family rather than seek more lucrative employment elsewhere and has not applied for a higher-paying job.

The age and health of the parties supports the court's conclusion. Specifically, Petitioner is 56 years old. Respondent is 40. (Her FL-157 Form signed on May 6, 2024 states she is 37.)  She testified on May 16, 2024 that overall, her health condition is "well" but in the past year she has experienced severe stress which has adversely impacted her health, e.g. by contributing to benign arrhythmia.

08/15/2024

She acknowledged during her testimony that she does not suffer from any health problem that impacts her ability to work and that she is currently working full-time.  Petitioner testified to some health problems including vision in one eye but also acknowledged during his testimony that his health problems do not impact his ability to work and he is currently working full-time.

The court notes that it is unclear the extent to which Respondent's need-based fee request is based on attorney fees and costs incurred with regard to the various other civil lawsuits pending between the parties.  If it is, Respondent failed to provide legal authority in support of the court's discretion to base a section 2030 on fees incurred in lawsuits other than this one, including without limitation authority in support of the argument that the other lawsuits are "related" to this dissolution action within the meaning of section 2030(c) and/or that awarding fees for the nonmarital proceedings would serve the purpose of section 2030.

Based on the foregoing analysis and considering the totality of the circumstances including without limitation credibility findings at trial, the court does not find that the award being sought by Respondent is just, reasonable, or appropriate.  Her request for need-based attorney fees is therefore denied.

## PETITIONER'S AND RESPONDENT'S REQUESTS FOR ATTORNEY'S FEES AS SANCTIONS PER FAMILY CODE 271

Petitioner is seeking an order that Respondent pay $100,000 or $45,000 or $145,000[3] to Petitioner as a sanction pursuant to Family Code Section 271.  Respondent is seeking an order that Petitioner pay $111,108.80 to Respondent as a Section 271 sanction.  The court, considering the totality of the circumstances including without limitation credibility findings at trial, and in the exercise of its broad discretion, denies both parties' requests for attorney's fees and costs as sanctions under Family Code section 271.

Sanctions under section 271 are committed to the discretion of the trial court and will be reversed on appeal only on a showing of abuse of that discretion, that is "only if, considering all of the evidence viewed more favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." In re Marriage of Davenport (2011) 194 Cal.App.4th 1507, 1524.

An initial procedural requirement is that sanctions cannot be imposed unless the party or attorney to be sanctioned is given notice and an opportunity to be heard. The notice must state the specific sanctions authority relied on. The notice must also state the specific grounds and conduct for which sanctions are requested. This procedural requirement has been met.  Each party stated at the outset of trial an intent to seek Family Code section 271 sanctions and the court made specific orders regarding the attorney fees portion of the trial including without limitation a briefing schedule to ensure

---

[3] Petitioner's counsels' declarations are not consistent as to the amount of fees and costs requested; it is unclear to the court what total amount Petitioner is requesting in sanctions.

the opportunity to be fully heard.  Both parties have articulated with specificity the
conduct for which sanctions are requested.

To grant such sanctions, these elements must be proved:

1. The sanctioned party must be reasonably likely to have the ability to pay,
   considering the party's income, assets, and liabilities.  Based on the parties'
   incomes, assets and liabilities, Petitioner appears to have sufficient resources to
   pay some but not all of Respondent's requested sanctions.  Respondent does
   not appear to have sufficient resources to pay Petitioner's requested sanctions.

   The court did not find Respondent's testimony about her assets and obligations
   to be credible, as discussed above.  Despite the court's credibility concerns,
   however, there is insufficient competent, admissible evidence establishing that
   Respondent has the present ability to pay the $45,000+ in section 271 sanctions
   being requested here.

2. The sanction must not impose an unreasonable financial burden. Considering
   each party's income, assets, and liabilities, as well as the additional Section
   4320 factors discussed above, the court finds that each proposed sanction in
   this case would impose an unreasonable financial burden on the party against
   whom it would be imposed.

3. The court must determine whether the sanctioned party's or their attorney's
   conduct has frustrated the legal policy to promote settlement and, when
   possible, reduce litigation costs by encouraging cooperation.

   Neither side's behavior has been consistent with the strong legal policy to
   promote settlement.  Both sides engaged in the following types of conduct. They
   unreasonably failed to comply with court orders and did not adequately meet and
   confer regarding disputes before seeking court intervention.  For example,
   neither party complied fully with the court's detailed pretrial orders, which were
   designed to facilitate timely exchange of trial information and avoid surprise and
   unnecessary attorney fees and costs. Neither party complied fully with the
   court's orders regarding the content and format of the pleadings for this
   bifurcated trial on attorney fees and costs.  Because there was no demand for
   exchange of expert witnesses or declarations, experts were retained at the last
   minute, and there was inadequate time for them to meet and confer in advance
   of the start of trial. There had been no meet and confer/stipulation regarding
   admissibility or authentication of exhibits, and some of the time the court had set
   aside for trial was expended on belated discussion of exhibits.  Evidentiary
   issues such as the objection to Petitioner's expert were not briefed in advance
   via a *motion in limine* as suggested in the court's Pretrial Orders.  Inordinate
   court time compared to the value of the items in dispute was taken up with
   division of personal property issues.   Because neither side hired a court
   reporter, additional fees had to be incurred on both sides to generate some

08/15/2024

settled statements; ultimately neither party followed the court's specific orders to complete all settled statements. Basic proof problems on either side (e.g. Respondent's proposed 401K division lacked evidence of tax rates or penalties for early withdrawal or a source from which the equalizing payment might be made; Petitioner's appraisal lacked competent, admissible evidence as to the allegedly cracked foundation) were obvious. Respondent also divested herself of the Odyssey property in violation of the ATRO's in the Summons and did not serve her Preliminary Declaration of Disclosure in a timely way.

Persuasive evidence established that Petitioner's former counsel became embroiled in the situation; and that significant paralegal work on the case was performed by Petitioner's adult son, who was deeply emotionally involved in the parties' dispute and whose personal interactions with Respondent were previously characterized by the court as "escalated, childish, and unproductive" on both sides. Respondent argues persuasively that the work summaries which Petitioner's former counsel submitted should not be considered. These summaries are not properly authenticated and are insufficient to support a fee request. Even if they had been authenticated, they appear to reflect work that is not clearly related to this Dissolution of Marriage case. Representations as to Petitioner's former counsel's billing rate in Petitioner's Income and Expense Declarations and in her declarations are inconsistent.

Respondent, in turn, advanced positions at trial (including without limitation regarding the date of separation, division of the 401K, permanent spousal support, and reimbursements) that were not reasonably supported in law or fact, and that she failed to disclose settlement proceeds. Respondent initially sought $114,050.28 for reimbursements notwithstanding that there was no legal authority for the majority of her claims. She sought a later date of separation despite the admitted near-total lack of contact, social, emotional, or financial connections between the parties during the disputed period. The tone of Respondent's July 29, 2024 Declaration is highly escalated, and that document consists mostly of improper argument. It attaches additional documents like bar complaints against Petitioner's former counsel and unauthenticated documents relating to lawsuits brought against Petitioner's former counsel by other unrelated litigants, the probative value of which is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice. Evidence Code section 352.

In addition, the competent, admissible evidence establishes that both parties filed and perpetuated multiple additional claims against one another in various other courts. The evidence reflects a high level of animosity, vitriol, and personal embroilment on both sides. The pleadings submitted in support of each party's request for fees at trial are a compelling illustration. For example, Respondent's July 29, 2024 declaration states:

"Ms. Goldberg states in her declaration that on Page 1, Line 15, Item 3, that she has never sought to collect attorney fees, even in the two cases of hers that went to trial. This is false. I am attaching as Exhibit C a copy of a correspondence to Ms. Goldberg written by the State Bar of California which demonstrates that she has harassed others for hundreds of thousands of dollars in attorney's fees after stating that she has taken on the case pro bono. 12. Ms. Goldberg has falsely provided to this Court as Exhibit 20, correspondence with the state bar with a fake bar case number, to falsely allege her state bar case involving myself was dismissed which is not true . . . It is important to note that Ms. Goldberg has taken shots at all of my attorneys and alleged all of my attorneys are unethical including: i. Sandra Nutt, ii. Seth Bowen, iii, Emmanuel Zola; iv. Tim Hannigan; and v. Jonathan Gerber. The common denominator each time is Ms. Golberg and Mr. Ruano, the Petitioner in this matter, has permitted her to run up the bill, stall and delay this matter, and pursue frivolous litigation which has resulted in an astronomical bill for this divorce matter that I cannot afford to pay. A main theme of this case is that she continues to extort me for fees that were never paid or incurred by her clients as she has done the work "pro bono". She then engages in scorched earth litigation to make the "pro bono" fees against me higher so that if I am forced to pay them I will be forced to seek bankruptcy relief . . . She is also under criminal investigation in connection with that case. The fabrication will never end and I ask the Court to disregard her statements and representations and to disregard the statements and representations of Mr. Seidel who is choosing to put them forward. Furthermore, all the extra work of Mr. Seidel and my attorney directly stemmed from the scorched earth litigation tactics of Ms. Goldberg and Petitioner. I attended 3 days of mediation with Petitioner and Mr. Seidel and we came close to resolving this case. Petitioner eventually refused to settle and he insisted that Ms. Goldberg be able to continue her multi-million-dollar lawsuit against me in District Court as he wants her to continue chasing and harassing me on his behalf even after this divorce is final."

Petitioner's former counsel's Responsive Declaration adopts a comparably inflammatory and escalated tone:

"Ms. Ruano's tracking of my whereabouts through private investigators and otherwise is a prime example of the insanity that drove up expenses in this case . . . To give you an example of the lengths of Ms. Ruano's misinformation, Ms. Ruano's bar complaint, which she has filed several of, is the epitome of maliciousness and misinformation. It states: "Attorney Julie Ann Goldberg AKA Julie D. Reardon….her date of Birth is 03/03/1959. Her parents are Stephen and Florine Goldberg. She became a lawyer in her 40's roughly around the time her father went to prison for 6 years for committing fraud in Florida, (EXHIBIT A2). Goldberg then became the sole and legal guardian of both parents after his sentencing,

08/15/2024

assuming the business operations of "Goldberg and Associates" from her
father which was passed down to her. In 2018 Goldberg became the sole
and legal guardian for both her parents. Obtaining sole guardianship of
both parents provided Julie leverage to conduct activity under each of their
names, herself, and their business "Goldberg and Associates." Her brother
Gary Goldberg has been the bookkeeper and the tax associate for
"Goldberg and Associates" for many years. (EXHIBIT A4) . . .  Instead of
having compassion for the circumstance above at the time Florine
Goldberg my "mom" in spirit and love passed away I was responding to a
bar complaint by Ms. Ruano. This is how this ENTIRE case has gone.
80% of the time was spent on this case - responding to OUTLANDISH and
false claims . . . Throughout my career, I have handled approximately nine
to ten family law cases and have never requested attorney's fees, even in
the two cases that went to trial and I was successful, however, the
outlandish conduct by Ms. Ruano exceeds all idea or reason even in the
worst circumstances."

Both parties have played primary and active roles in escalating and perpetuating the
litigation between them in contravention of the public policy favoring settlement.  It does
not appear to the court, despite the relentless hyperbole and finger-pointing in both
parties' pleadings, that either party is materially more responsible than the other in
frustrating the public policy favoring settlement.  Even if the court were to find – which it
does not – that each party is able to pay the requested sanctions and that those
sanctions do not pose an unreasonable financial burden, any Section 271 sanction the
court might impose on one party would be offset by an equivalent sanction against the
other.  Under these circumstances, the court denies both parties' sanctions requests.

With regard to the remaining legal disputes pending between the parties in other
forums, the court notes that the Legislature has determined that the "peaceful resolution
of disputes in a fair, timely, appropriate, and cost-effective manner is an essential
function of the judicial branch of state government under Article VI of the California
Constitution."  Code of Civil Procedure Section 1775(a).  "In the case of many disputes,
litigation culminating in a trial is costly, time consuming, and stressful for the parties
involved. Many disputes can be resolved in a fair and equitable manner through less
formal processes."  Code of Civil Procedure Section 1775(b).  The court strongly
encourages counsel to consider and discuss with their clients whether the clients'
interests could be adequately served, and the controversy expeditiously and
economically disposed of, by mediation, arbitration, neutral evaluation, settlement
conference, collaborative family law process, or any other available form of consensual
dispute resolution.  The court strongly encourages counsel to provide clients with a
detailed explanation of each available consensual dispute resolution/ADR process,
including without limitation the extent to which each process is confidential and the
extent to which each is non-binding.  See Los Angeles County Superior Court Local
Rules, Appendix 3.A(k), Guidelines for Civility in Litigation. Some basic information
about types of non-litigation dispute resolution is available through the Judicial Branch
of California website at https://www.courts.ca.gov/programs-adr.htm.

This is the court's tentative decision on the bifurcated principal controverted issue i.e.
(attorney fees and costs) in accordance with CCP section 632 and CRC 1590. It will
become the Statement of Decision (SOD) unless the steps required under CRC
3.1590(d) are taken by either side within the timeframe set forth therein. In this event,
the court designates counsel for Petitioner to prepare the proposed SOD. The
proposed SOD must incorporate this tentative decision *in haec verba*; it may include
additional language to address principal controverted issues specified by the parties. It
must be filed and served.

In light of the issuance of this ruling, the continued trial date previously set for August
29, 2024 at 8:30 am for purposes of announcing the court's ruling is advanced to
today's date and taken off calendar.

Dated: August 14, 2024

JUDGE ELIZABETH SCULLY

# EXHIBIT C

**LAW OFFICES OF MICHAEL LABRUM**
**MICHAEL D. LABRUM (SBN 284403)**
2625 Townsgate Road, Suite 330 (Third Floor)
Westlake Village, CA 91361
Telephone:     (805) 267-1171
Facsimile:     (805) 852-2164
Michael@LabrumLaw.com

Attorneys for Plaintif Laura Ruano

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/28/2025 9:59 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Boyadzhyan, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LAURA RUANO,<br><br>                    Plaintiff,<br><br>vs.<br><br>JULIE GOLDBERG, ET AL.,<br><br>                    Defendants.<br><br>————————————————<br><br>AND RELATED CROSS-CLAIMS | Case No.: 21VECV01054<br><br>*Honorable Judge Wendy L. Wilcox*<br>Department W<br><br><br>**PLAINTIFF'S NOTICE OF EX PARTE APPLICATION FOR AN ORDER AND EX PARTE APPLICATION FOR ORDER TO CONTINUE DEFENDANT'S MOTION FOR ATTORNEY FEES; MEMORANDUM OF POINTS AND AUTHORITES; DECLARATION OF MICHAEL LABRUM; AND [PROPOSED] ORDER**<br><br><br>DATE:  May 29, 2025<br>TIME:  8:30 A.M.<br>DEPT:  W |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS**

**OF RECORD:**

PLAINTIFF EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION FOR ATTONREY FEES
PAGE 1 OF 9

**PLEASE TAKE NOTICE** that on May 28, 2025 at 8:30 a.m., or soon thereafter as the matter may be heard, in Department W of Van Nuys Courthouse, located at 6230 Sylmar Avenue, Van Nuys, CA 91401, Plaintiff Laura Ruano will, and hereby does, move *ex parte* for an order to continue Defendant's hearing on the motion for attorney fees and providing Plaintiff with additional time to file and serve the opposition on or before nine court days of the continued hearing date.

This Application is made on the grounds that Plaintiff's new counsel, Michael Labrum, just substituted into the case as attorney of record for Plaintiff and is in the process of reviewing the client files and court records in order to prepare, file and serve the opposition. Plaintiff seeks a continued hearing date of July 29, 2025, or a date thereafter convenient for Defendant and the Court.

The *ex parte* Application will be based on this Notice of Application, the support Points and Authorities, the Declarations Michael Labrum, the exhibits attached to the declarations in support thereof, the pleadings and other records in this action, all matters of which the Court may take judicial notice, and such further argument and evidence as may be presented at the hearing.

Dated:  May 28, 2025              LAW OFFICES OF MICHAEL LABRUM

_____
                    Michael Labrum
                    Attorneys for Plaintiff

**POINTS AND AUTHORITES**

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff has substituted in new counsel for purposes of opposing Defendant's motion for attorney's fees.  Plaintiff's new counsel requires adequate time to review the client files, court documents, motion for attorney's fees, and prepare the opposition.

Exhibit 1, attached to the Declaration of Michael Labrum, is a true and correct copy of the substitution of attorney that has been electronically submitted for filing with the Court. The substitution has been served via email and mail on Defendant's attorneys.

In conclusion, the *ex parte* application for an order should be granted to continue the hearing on Defendant's motion for attorney's fees to July 29, 2025, or a date thereafter.

## II.    CALIFORNIA RULES OF COURT, RULE 3.1202 – 3.1203

Pursuant to California Rules of Court, Rule 3.1202(a), Julie Goldberg and Martin Keleti are the attorneys of record for Defendant Julie Goldberg per online court docket (Los Angeles County Superior Court Attorney Portal). The addresses, e-mail addresses, and telephone numbers for Defendant's attorneys of record are as follows:

GOLDBERG & ASSOCIATES, PC<br>
JULIE GOLDBERG, ESQ.<br>
14370 Ventura Blvd.<br>
Sherman Oaks, CA 91423<br>
Telephone: (818) 99901559<br>
Email: ecf@goldbergimmigration.com

S. Martin Keleti, Esq.<br>
9903 Santa Monica Boulevard, PMB 751

Beverly Hills, CA 90212

E-mail: s.martin.keleti@gmail.com

Pursuant to Rule 3.1202(b), this is Plaintiff's first *ex parte* application based on the relief sought by new counsel in this application regarding the continuance of Defendant's hearing on the motion for attorney's fees.

Pursuant to Rule 3.1202(c), the Declarations Michael Labrum provides an affirmative factual showing, based on personal knowledge, that Plaintiff would suffer irreparable harm and prejudice if new counsel is not provided additional time to review the client files, court documents, and diligently prepare the opposition.

Pursuant to Rule 3.1203(a), notice was provided to Defendant's attorneys of record prior to 10:00 a.m. the court day before the ex parte appearance (**Declaration of Michael Labrum**.)

## III.   LEGAL DISCUSSION

### A.   The Court Possesses Inherent Power Continue The Hearing Upon Substitution of New Counsel.

The trial court "should exercise liberality in the granting of a continuance . . ." *(Larson v. Solbakke*n (1963) 221 Cal.App.2d 410, 429; *J.M. v. W.T.* (2020) 46 Cal.App.5th 1136, 1140; *Cohen v. Herbert* (1960) 186 Cal.App.2d 488, 493.)

Plaintiff requests the Court utilize its inherent power to continue Defendant's hearing on the motion for attorney's fees to allow new counsel to diligently review and become familiar with the client files, court documents, and motion for attorney fees in order to

prepare, file and serve the opposition. Plaintiff's new counsel requires adequate time to prepare a sufficient opposition and timely file and serve said opposition. Without a continuance, Plaintiff's new counsel will not be able to properly and sufficiently oppose the motion which would be prejudicial to Plaintiff. Plaintiff would be unfairly prejudiced and harmed without the granting of the continuance for a short period of time. The continuance would be the final continuance needed by Plaintiff in order to properly and sufficiently prepare the opposition to the motion for attorney's fees.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Court grant the *ex parte* application for an order continuing Defendant's motion for attonrey's fees to July 29, 2025, or a date thereafter convenient for Defendant and the Court.


Dated:  May 28, 2025                    LAW OFFICES OF MICHAEL LABRUM


                                        _____
                                        Michael Labrum
                                        Attorneys for Plaintiff

---

# DECLARATION OF MICHAEL LABRUM

I, Michael Labrum, declare:

1.      I am a licensed attorney at law duly authorized to practice law in the State of California, Ninth Circuit Court of Appeals,  and the District of Columbia (Washington, D.C.). I represent Plaintiff Laura Ruano in the above-entitled matter. The facts set forth in my Declaration are personally known to me and if called as a witness, I would competently testify as these facts. I request the Court receive my Declaration into evidence as my direct testimony as permitted by Code of Civil Procedure section 2015.5. *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479 and *Marriage of Stevenot* (1984) 10 154 Cal.App.3d 1051.

2.      Exhibit 1 is a true and correct copy of the substitution of attorney electronically submitted to the Court for filing. The substitution of attorney was served via email and mail on Defendant's attorneys.

3.      I would not be able to adequately prepare the opposition without the continuance of the hearing as additional time is needed to diligently and sufficiently prepare the opposition. Plaintiff would suffer irreparable harm and prejudice if I am not provided with the time necessary to prepare the opposition.

4.      On May 28, 2025 at 9:55 a.m., I emailed Martin Keleti at s.martin.keleti@gmail.com and Julie Goldberg at ecf@goldbergimmigration.com providing notice of the ex parte hearing for May 29, 2025 at 8:30 in Dept. W.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Signed May 28, 2025 in Westlake Village, California.

By: _____

Michael Labrum

EXHIBIT 1

MC-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Michael Labrum, Esq. (SBN 284403)<br>LAW OFFICES OF MICHAEL LABRUM<br>2625 Townsgate Road, Suite 330 (Third Floor)<br>Westlake Village, CA 91361<br>TELEPHONE NO.: 805-267-1171    FAX NO. *(Optional)*: 805-852-2614<br>E-MAIL ADDRESS *(Optional)*: Michael@LabrumLaw.com<br>ATTORNEY FOR *(Name)*: Laura Ruano | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 Sylmar Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Van Nuys, CA
BRANCH NAME: Van Nuys East Courthouse

CASE NAME:
LAURA RUANO v. JULIE GOLDBERG

| SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | CASE NUMBER:<br>21VECV01054 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name)*: Laura Ruano    makes the following substitution:

1. **Former legal representative**  ☐ Party represented self  ☑ Attorney *(name)*: Jonathan L. Gerber
2. **New legal representative**  ☐ Party is representing self*  ☑ Attorney
   a. Name: Michael Labrum    b. State Bar No. *(if applicable)*: 284403
   c. Address *(number, street, city, ZIP, and law firm name, if applicable)*:
      Law Offices of Michael Labrum, 2625 Townsgate Road, STE 330, Westlake Village, CA 91361

   d. Telephone No. *(include area code)*: 805-267-1171
3. The party making this substitution is a   ☑ plaintiff  ☐ defendant  ☐ petitioner  ☐ respondent  ☐ other *(specify)*:

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- Guardian
- Conservator
- Trustee
- Personal Representative
- Probate fiduciary
- Corporation
- Guardian ad litem
- Unincorporated association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4. I consent to this substitution.
Date: 5/27/2025
Laura Ruano
_____
(TYPE OR PRINT NAME)    ▶ *[signature]* Laura R. Ruano
(SIGNATURE OF PARTY)

5. ☑ I consent to this substitution.
Date: 5/27/2025
Jonathan L. Gerber
_____
(TYPE OR PRINT NAME)    ▶ *[signature]*
(SIGNATURE OF FORMER ATTORNEY)

6. ☑ I consent to this substitution.
Date: 5/27/2025
Michael Labrum
_____
(TYPE OR PRINT NAME)    ▶ *[signature]*
(SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)    Page 1 of 2

| Form Adopted For Mandatory Use<br>Judicial Council of California<br>MC-050 [Rev. January 1, 2009] | SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | Code of Civil Procedure, §§ 284(1), 285;<br>Cal. Rules of Court, rule 3.1362<br>www.courtinfo.ca.gov |
|---|---|---|

MC–050

| CASE NAME: | CASE NUMBER: |
|---|---|
| LAURA RUANO v. JULIE GOLDBERG | 21VECV01054 |

### PROOF OF SERVICE BY MAIL
### Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An underlined copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify):*
   Law Offices of Michael Labrum,  2625 Townsgate Road, STE 330 Westlake Village, CA 91361

2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.

   (1) Date of mailing:  5/27/2025        (2) Place of mailing *(city and state):*  Camarillo, Ca

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    5/27/2025

Michael Labrum
_____
(TYPE OR PRINT NAME)                                              (SIGNATURE)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

4.  a. Name of person served:  JULIE A. GOLDBERG, ESQ.

   b. Address *(number, street, city, and ZIP):*
      GOLDBERG & ASSOCIATES, PC
      14370 VENTURA BLVD., SHERMAN OAKS, CA 91423

   c. Name of person served:

   d. Address *(number, street, city, and ZIP):*


   e. Name of person served:

   f. Address *(number, street, city, and ZIP):*


   g. Name of person served:

   h. Address *(number, street, city, and ZIP):*


   i. Name of person served:

   j. Address *(number, street, city, and ZIP):*


☐ List of names and addresses continued in attachment.

MC-050 [Rev. January 1, 2009]                    **SUBSTITUTION OF ATTORNEY—CIVIL**                    Page 2 of 2
                                                  **(Without Court Order)**

**PROOF OF SERVICE**

**VENTURA COUNTY, CALIFORNIA (C.C.P. Section 1011; 1013(a)(1) & (3)**

I declare that I am over the age of 18 and not a party to this action.  I am a resident of or employed in the county where the service took place.  My address is Law Offices of Michael Labrum, 2625 Townsgate Road, Suite 330, Westlake Village, California 91361.

On May 28, 2025, the following document described as:

**PLAINTIFF'S NOTICE OF EX PARTE APPLICATION FOR AN ORDER AND EX PARTE APPLICATION FOR ORDER TO CONTINUE DEFENDANT'S MOTION FOR ATTORNEY FEES;
MEMORANDUM OF POINTS AND AUTHORITES;
DECLARATION OF MICHAEL LABRUM; AND [PROPOSED] ORDER**

was served by e-mail to s.martin.keleti@gmail.com (Martin Keleti) and ecf@goldbergimmigration.com (Julie Goldberg).

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed on May 28, 2025 in Camarillo, California.

Michael Labrum