**GOLDBERG & ASSOCIATES**
JULIE A. GOLDBERG (SBN 235565)
3005 Oakwood Blvd
Melvindale, Michigan 48122
Telephone: (818) 999-1559
Email: ecf@goldbergimmigration.com

*Plaintiff Appearing in Pro Per*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| | Case No.: 2:23-cv-02395-GW-AGR |
| | *[Assigned to the Honorable George H. Wu]* |
| JULIE ANN GOLDBERG | |
| *Plaintiff,* | |
| vs. | **PLAINTIFF JULIE ANN GOLDBERG'S NOTICE OF MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT; NOTICE OF LODGING OF EVIDENCE; STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; [PROPOSED] ORDER** |
| LAURA RUANO[1] and THOMAS MONTELEONE, | |
| *Defendants.* | |
| | Hearing Date: September 22, 2025 Time: 8:30 a.m. Courtroom: 9D, 9th Floor |

---

[1] It is the understanding of Plaintiff that Defendant Laura Ruano is now legally known as Laura Monteleone following the completion of her divorce.

## **Table of Contents**

Preliminary Statement……………………………………………………………2

Statement of Facts………………………………………………………………4

  A. First Civil Action Against Plaintiff…………………………………..…4

  1. Motion to Disqualify based on prior Attorney-Client Relationship………...6

  2. The Second Amended Complaint in the First Civil Action……………..…7

B. Falsified Restraining Order and Second Civil Action …………………………8

  1. The Second Civil Action Against Goldberg………………………………8

  2. The Falsified Restraining Order Case Against Goldberg…………………10

C. False Bar Complaints Against Plaintiff Goldberg …………………………10

  1. First Bar Complaint Filed by Defendant Ruano……………………10

  2. The Second Bar Complaint by Defendant Ruano …………………...11

  3. Bar Complaints Filed By Others in Coordination with Defendant Ruano………………………………………………………12

D. The Fourth Civil Action ……………………………………………13

E. Defendant Ruano's Multiple Malicious Actions Against Plaintiff Goldberg….13

F. The Present Action  …………………………………………………14

Standard of Review ……………………………………………………14

Legal Standards……………………………………………………......16

  A. Malicious Prosecution under California Law …………………………16

Argument ……………………………………………………………17

A.    PLAINTIFF HAS ESTABLISHED DEFENDANTS' LIABILITY FOR MALICIOUS PROSECUTION……………………………………………17

  1. Plaintiff has Established Defendant Laura Ruano and Thomas Monteleone are Liable for Malicious Prosecution …………………………………..…17

    a. Defendants Directed Litigation to Be Filed Against Plaintiff Goldberg, and the Litigation Resolved in Plaintiff Goldberg's Favor…………...17

    b. Defendants Lacked Probable Cause for the Actions Brought Against Plaintiff Goldberg……………………………………………………19

    c. Defendants Acted with Malice in Bringing the Actions Against Plaintiff Goldberg ……………………………………………………22

B.    PLAINTIFF GOLDBERG HAS ESTABLISHED SHE HAS SUFFERED DAMAGES AS A RESULT OF THE MALICIOUS PROSECUTION AGAINST HER …………………………………………………………………27

  a.  Plaintiff Goldberg has Established she has Incurred Financial Losses in the Form of Attorney Fees and Collateral Damages in Responding to the Litigation from the Defendants Necessitating Compensatory Damages……………………27

  b.  Plaintiff Goldberg has Established she has Suffered Collateral Losses as a Result of the Litigation from the Defendants Necessitating Compensatory Damages…………………………………………………………………28

    c.  Plaintiff Goldberg Requests Restrictions on Further Ability of the Defendants to File Legal Actions Against Her……………………………………..30

CONCLUSION……………………………………………………………………..32

Certification of Counsel………………………………………………………………33

## <u>Table of Authorities</u>

**Cases**

*American International Group, Inc. v. American International Bank*,
 926 F.2d 829 (9th Cir. 1991) ........................................................ 14

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ..................................................................... 14

*Babb v. Superior Court*,
 3 Cal.3d 841, fn. 4. (1971) .......................................................... 26

*Barrett v. Negrete*,
 126 Fed.Appx. 816 (9th Cir. 2005) ............................................. 17

*Bertero v. National General Corp.*,
 13 Cal.3d 43. (1974) .................................................................... 26

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ..................................................................... 14

*Davis v. Local Union No. 11, Internat. Etc. of Elec. Workers*,
 16 Cal.App.3d 686 (1971) ........................................................... 25

*De Long v. Hennessey*,
 912 F.2d 1144 (9th Cir. 1990) ............................................... 28, 29

*Downey Venture v. LMI Ins. Co.*,
 66 Cal.App.4th 478–499, fn. 29 (1998) ..................................... 21

*Farmers & Merchants Trust Co. v. Vanetik*,
 33 Cal. App. 5th 638 (2019) ........................................................ 27

*Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*,
 165 Cal. App. 3d 1029 (1985) ..................................................... 18

*HMS Capital, Inc., v. Lawyers Title Co.*,
 118 Cal. App. 4th 204 (2004) ................................................. 21, 22

*MacDonald v. Joslyn,*
    275 Cal.App.2d 282 (1969) ........................................................ 17

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) .................................................... 15

*Sagonowsky v. More,*
    64 Cal.App.4th 122 (1998) ...................................................... 25

*Sierra Club Foundation v. Graham,*
    72 Cal.App.4th 1135 (1999) .................................................... 21

*Soukup v. Law Offices of Herbert Hafif,*
    39 Cal.4th 260, 292 (2006)...........................................19, 21, 24

*Sycamore Ridge Apartments LLC. v. Naumann,*
    157 Cal. App. 4th 1385 (2007) ........................................... 18, 21

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) ................................................. 14

*Zamos v. Stroud,*
    32 Cal. 4th 958 (2004) ...................................................... *passim*

**Statutes**

28 U.S.C. § 1651(a) ...................................................... 28, 29
CCP § 1010.6(a)(4) ............................................................ 32
Cal. Civ. Pro. 1717 ........................................................... 25
Cal. Civ. Code, § 3294 ....................................................... 25
Cal. Civ. Pro. 3295 ........................................................... 27

**Rules**

Fed. R. Civ. P. 56(a) .......................................................... 14
Fed. R. Civ. P. 56(c), (e) ..................................................... 14
Fed. R. Evid. 201(b) .......................................................... 15

### Preliminary Statement

Plaintiff Julie Ann Goldberg served Defendant Laura Ruano with a Dissolution Action and expressed the soon-to-be ex-husband's desire for a quick settlement and fair that would save both parties resources and money on February 17, 2021. The past four and half years that have followed have been an expensive, stressful quagmire that has destroyed the lives, not only of Plaintiff Goldberg, but everyone around her, including staff, associated counsel and clients.

Defendant Ruano, supported and abetted by Defendant Monteleone has hired private investigators to stalk Plaintiff Goldberg any time she arrives in California for a hearing or to handle a client matter, following her all the way to the airport (SOF  45, 70). Ms. Ruano has called the Department of Homeland Security and FBI to give false reports and cause investigations which have alienated and terrified Plaintiff Goldberg's staff and clients (SOF  49, 50, 70). She has reached out to former employees in an attempt to coordinate filing lawsuits and bar complaints, including one who stole more than $400,000 from Plaintiff Goldberg's business (SOF  43). Ms. Ruano track down Ms. Goldberg's previous cases and collaborated with the ex-husbands of Plaintiff Goldberg's pro bono domestic violence abuse cases, who hold grudges against Plaintiff Goldberg for the consequences of their own actions urgent to file bar complaints (SOF  43, 44). Mr. Ruano has filed her

own multitude of baseless lawsuits, bar complaints and FBI and police reports against Plaintiff Goldberg, pursuing appeals where she loses and dismissing other cases when it is apparent she is about to lose. (SOF   60).

Not a single lawsuit has been resolved in their favor (SOF   35, 60), none of Defendant Ruano's efforts to report Plaintiff Goldberg as a "fraud" or some kind of criminal have led to her arrest or disbarment (SOF   30-33, 34, 36, 37, 48), all of which were dismissed. Plaintiff Goldberg has been forced to needlessly incur attorney fees and expenses (SOF   57-58 ). More than anything financial, the damage to Plaintiff Goldberg's businesses and reputation, and the fear instilled in her clientele in an especially trying time for immigrants has been more extensive than can be quantified in dollars alone. (SOF   59, 70). None of this was done for any reason other than to hurt Plaintiff Goldberg for representing Defendant Ruano's ex-husband in court.

Malicious prosecution requires proof that the underlying litigation (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. *Zamos v. Stroud*, 32 Cal. 4th 958 (2004). Plaintiff Goldberg respectfully requests that this Honorable Court find that there is no question of the material facts in this case, that Defendants Ruano and Monteleone

3

acted with malice and without probable cause to bring multiple lawsuits against Plaintiff Goldberg. It is further requested that the Court find these actions have resulted in damages to Plaintiff Goldberg in the form of attorney fees, the loss of business and clients, the closure of her New York office, and additional expenses incurred in hiring outside counsel to cover the loss of staff and take care of the remaining clients justifying not only compensatory damages, but punitive damages as well.

No material fact can give way to the clear malice and lack of probable cause in this relentless barrage of litigation, nor can it create an illusion that any of the lawsuits were resolved in anything but Plaintiff Goldberg's favor. Accordingly, it is respectfully requested that summary judgment be granted in favor of Plaintiff Goldberg, and appropriate relief be granted to finally bring an end to misconduct and abuse of the legal system or in the alternative grant summary judgment as to the issue of liability and set trial for the issue of damages.

## **Statement of Facts**

### A. **First Civil Action Against Plaintiff**

On August 8, 2021, Defendant Ruano filed a civil complaint against Plaintiff in the Los Angeles Superior Court, entitled *Laura Ruano v. Julie Goldberg, et al.,* Case No. 22VECV01054 (the "First Civil Action"). (Statement of Uncontroverted

Facts ("SOF"),    1). This action sought to penalize Plaintiff for representing Mr. Ruano in the Dissolution Action, claiming breach of fiduciary duty for prior client conflicts, among related allegations, and including interference with marital relations, which did not exist as a viable cause of action in the State of California (SOF    2-3). The First Civil Action alleged that Plaintiff had previously represented Defendant Ruano in numerous business affairs in or around March, 2019. No such representation had ever occurred, and Defendant Ruano did not know who Plaintiff was prior to being served on February 17, 2021. Defendant Ruano herself had texted Mr. Ruano on February 17, 2021, "Why are you having some lady come to my job to serve me who is not a lawyer or a process server?" (SOF    12). On September 14, 2021 at approximately 1:51 pm PST, in connection with the First Civil Action, Defendant Ruano's counsel, Mr. Emmanuel Zola, called Mr. Luis Ruano and advised him that the First Civil Action against Plaintiff and Mr. Ruano's son would "go away" if the divorce proceedings against Defendant Ruano were dismissed; otherwise, they would make sure Mr. Ruano's son never became a lawyer. (SOF    6).

The court dismissed the first complaint and granted leave to file a First Amended Complaint in the First Civil Action on May, 18, 2022, with an order that Defendant Ruano meet and confer with Plaintiff and the other defendants in the

5

action prior to filing (SOF    4). On May 23, 2022, Defendant Ruano filed her First Amended Complaint. As Defendant Ruano failed to meet and confer with any parties, the court struck the First Amended Complaint in its entirety on July 8, 2022, with leave to file a second amended complaint after complying with the meet and confer order  (SOF    5).

### 1.  Motion to Disqualify based on prior Attorney-Client Relationship

On February 2, 2022, Defendant Ruano, through Mr. Bowen, filed a motion to disqualify Plaintiff as Mr. Ruano's attorney in the Dissolution Action between Defendant Ruano and her now ex-husband. For the first time in the Dissolution Action, after a year of representing Mr. Ruano, Defendant Ruano falsely raised the same conflict of interest as the First Civil Action, alleging Plaintiff had represented Defendant Ruano previously during a time prior to Plaintiff ever even knowing the Ruano family (SOF    10).

On March 22, 2022, the trial court in the Dissolution Action held a hearing, reviewed evidence and took testimony on the Motion to Disqualify Plaintiff from representing Mr. Ruano. Defendant Ruano had no evidence to support her allegations, against the substantial evidence to the contrary presented by Plaintiff and Mr. Ruano, including Defendant Ruano's own text messages, employment records of Robert showing he was never employed during the time of the

allegations, and records which showed Defendant Ruano had other representation during the claimed timeframe (SOF    12).  During testimony, the court gave Defendant Ruano ample opportunity to make her case, but she failed to show any prior representation or conflict. After an evidentiary hearing, it was determined that Plaintiff never represented Defendant Ruano and clear evidence that Defendant Ruano had been represented by a completely different firm – Littler Mendelson - was submitted, using the same evidence and arguments as the First Civil Action (SOF    11, 12, 13). In this motion to disqualify Plaintiff from the Dissolution Action, Defendant Monteleone also provided a declaration making the same false allegations as Defendant Ruano. (SOF    51).

### 2.  The Second Amended Complaint in the First Civil Action

On August 17, 2022, Defendant Ruano filed Second Amended Complaint in the First Civil Action. (SOF    8). On September 22, 2022, Defendant Ruano dismissed Plaintiff Goldberg as a Defendant as to the 3rd, 4th, and 5th Causes of Action for Ejectment, Conversion, and Negligent Infliction of Emotional Distress, but kept the causes of action related to her continued insistence that Plaintiff Goldberg was her prior attorney - despite the denial of the Disqualification Order on March 22, 2022.  (SOF    11, 24).

On October 17, 2022, Plaintiff filed an anti-SLAPP motion to strike and

demurrer in response to the First Civil Action (SOF    14) and a motion to dismiss. The anti-SLAPP motion filed by Plaintiff was granted on December 13, 2022 and Plaintiff was dismissed from the Second Amended Complaint (SOF    26). Plaintiff Goldberg filed an appeal of the trial court's denial of attorney fees, and Defendant filed a cross-appeal of the anti-SLAPP on March 3, 2023. On January 21, 2025, the California Court of Appeals granted Plaintiff Goldberg's appeal, remanding for determination of attorney fees, and denied Defendant Ruano's appeal of the grant of the anti-SLAPP motion. (SOF    35).

### B.  Falsified Restraining Order and Second Civil Action

Plaintiff had Defendant Ruano and Defendant Monteleone served with subpoenas seeking depositions to cross-examine the Defendants in regard to their falsified declarations supporting the Motion to Disqualify Plaintiff on February 25, 2022 (SOF    15).

Initially, the Defendants refused to answer the door for the process server, and instead called the police.  When the police arrived, the police explained to Defendant Ruano that the process server was there for validly and legally effectuate service.  Despite being told otherwise by the police themselves, Defendant Ruano and Defendant Monteleone immediately filed false police reports against Plaintiff (SOF    16). Included with Defendant Ruano's false police report was a lengthy, 90

page long dissertation listing a wrong date of birth for Plaintiff Goldberg, among other incorrect biographic information, attempting to connect Plaintiff Goldberg to every single Goldberg in the country who ever committed a crime, and falsely accusing Plaintiff Goldberg's deceased father in law of committing financial crimes in a place he had never lived, as well as connecting individuals to Plaintiff Goldberg as her "brother" or other relatives that were not even closely or distantly related to Plaintiff. (SOF    47).

## 1. <u>The Second Civil Action Against Goldberg</u>

On March 21, 2022, Plaintiff Ruano and Plaintiff Monteleone filed yet another civil complaint against Plaintiff (the "Second Civil Action"), entitled *Monteleone v. Goldberg,* at the Los Angeles Superior Court, Case No. 22VECV00402 (SOF    20).  The Second Civil Action mirrored the Restraining Order case that was dismissed,  accusing Plaintiff of assault, trespass, and intentional infliction of emotional distress. (SOF    20).  On July 17, 2022, Plaintiff's request for removal of the Second Civil Action to United States District Court, Central District of California, was granted. The case was reassigned case number 2:22-cv-04858-FMO-E.  (SOF    21). Plaintiff thereafter filed an anti-SLAPP motion in response to the Second Civil Action on August 5, 2022. (SOF    22).

On August 12, 2022, in response to anti-SLAPP motion filed a few days prior, Defendant Ruano and Defendant Monteleone filed a voluntary dismissal of the Second Civil Action (SOF    23).

### 2.  <u>The Falsified Restraining Order Case Against Goldberg</u>

Defendant Ruano additionally filed a petition for a civil harassment restraining order against Plaintiff, entitled *Ruano v. Goldberg*, in the Los Angeles Superior Court, Case No. 22VERO00392 ("the Restraining Order Case"). (SOF 18). Defendant Monteleone was listed as an additional protected person. A temporary restraining order was denied on March 9, 2022 and the case was set for a hearing (SOF    19). Despite the clear lack of evidence, it was not until several appearances later and on advice of the Court that Defendant Ruano dismissed the Restraining Order case with prejudice on August 12, 2022. (SOF    25).

### C. False Bar Complaints Against Plaintiff Goldberg

### 1.  First Bar Complaint Filed by Defendant Ruano

Around early 2022, Defendant Ruano filed a bar complaint against Plaintiff, once again raising her allegations that Plaintiff had represented her previously, although there existed at the time **two** court rulings finding otherwise. Plaintiff responded to this complaint on September 17, 2022, providing, once again, the evidence that there was no representation, the facts alleged by Defendant Ruano

were false, and showing the vexatious and litigious nature of Defendant Ruano. The Bar Complaint was closed by the State Bar of California.  (SOF    6).

### 2.  The Second Bar Complaint by Defendant Ruano

On January 10, 2024, Plaintiff received another bar complaint that had been filed by Defendant Ruano, again alleging that Plaintiff had represented her previously, even though this had already been determined false in several cases and anti-SLAPP motions (SOF    32). Defendant Ruano now additionally alleged that Plaintiff was using a client trust account to buy properties, although Plaintiff does not have a client trust account and does not handle client funds (SOF    32). Further, with no basis in fact, as Defendant Ruano had never been to Plaintiff's offices and is unaware of policies and practices in the office, Defendant Ruano alleged that Plaintiff recorded employees and clients without their knowledge, and has paralegals prepare and file documents as though they were attorneys (SOF    32). After Plaintiff Goldberg filed a response and while the State Bar was reviewing, Defendant Ruano additionally reached out and told the bar she had filed a Motion for Sanctions against Plaintiff Goldberg in this action before the Court. (SOF    33).

The State Bar of California again dismissed the Complaint on December 6, 2024 (SOF    34).

### 3.  Bar Complaints Filed By Others in Coordination with Defendant Ruano

Defendant Ruano then contacted opposing parties in some of Ms. Goldberg's Pro Bono domestic violence cases and directed them and encouraged them to file baseless bar complaints (SOF    32, 43) . Defendant Ruano coordinated with Mustafa Ebid to file a bar complaint against Plaintiff Goldberg as well, which was also dismissed (SOF    48). Defendant Ruano was additionally working together with Maher Kadmiry and Omar Saleh to put together the previously mentioned 400+ page bar complaint consisting of false accusations of prior representation and numerous baseless accusations including: filing false affidavits and records with the Court, enticing others to file false documents with the Court, claiming Plaintiff Goldberg had her firm's COO appear in court and lie about Plaintiff Goldberg being in surgery, and that Plaintiff Goldberg was using her client trust account to buy houses. Despite the more than 400+ pages of "evidence" that Defendant Ruano put together, a substantial portion of it did not even relate to Plaintiff Goldberg but several other completely non-related Goldberg's, as though Plaintiff Goldberg is the only Goldberg in the world, and all of it was false, and most of it had already had been denied and found to be false by a trial court after an evidentiary hearing. The Complaint, as noted above, was dismissed on December 6, 2024. (SOF    34).

**D. The Fourth Civil Action**

12

On May 15, 2025, Defendants Ruano and Monteleone filed a new, Fourth Civil Action against Plaintiff Goldberg, now alleging malicious prosecution. (SOF 38). The case was removed to the federal court on June 18, 2025. (SOF 39). On July 17, 2025, Plaintiff Goldberg filed an anti-SLAPP Special Motion to Strike and Dismiss the Complaint. (SOF 40). The Defendants failed to oppose or object to the Motion. (SOF 41). Instead, after missing their time to file an opposition, the Defendants filed a Notice of Voluntary Dismissal on August 8, 2025. (SOF 42). The Court has not yet ruled on the dismissal.

### E. Defendant Ruano's Multiple Malicious Actions Against Plaintiff Goldberg

Defendant Ruano's actions have not been limited to filing baseless lawsuits. Defendant Ruano  has hired private investigators to stalk Plaintiff Goldberg any time she arrives in California for a hearing or to handle a client matter, following her all the way to the airport (SOF 45, 70). She has called the Department of Homeland Security and FBI to give false reports and cause investigations which have alienated and terrified Plaintiff Goldberg's staff and clients (SOF 49, 50, 70). Ms.Ruano  has filed dozens of pages long affidavits accusing anyone with the name "Goldberg" of being related to Plaintiff Goldberg in order to create an image of Plaintiff Goldberg being from a family of criminals.  (SOF 47, 49, 70). Ms. Runo has not only created these filings to harm Plaintiff Goldberg, but people that

13

Plaintiff Goldberg has never met before and has created defamatory allegations about people that she dearly loves with reckless disregard to the falsity of those claims. (SOF     70).

**F. The Present Action**

By the time the present action ("this Action") was filed on March 30, 2023, Plaintiff Goldberg had endured several bar complaints, several civil actions dismissed in her favor, and Defendant Ruano's persistent stalking (SOF    60), and needed to find a way to bring an end to the legal actions. Defendant Ruano and Monteleone filed a Motion to Dismiss, on May 23, 2023 (See Docket No. 16), and Plaintiff filed an opposition on June 1, 2023. (See Docket No. 17). On June 22, 2023, this Court issued an order denying in part, and granting in part with leave to amend the Complaint. (See Docket No. 23). On August 4, 2023, Plaintiff filed the First Amended Complaint, which is the operative Complaint before this Court (See Docket No. 26).

Plaintiff Goldberg now seeks summary judgment as to liability of the Defendants and finding that she has incurred damages.

## **<u>Standard of Review</u>**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the

14

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson*, 477 U.S. at 256. Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926

F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

In deciding a summary judgment motion, the court may consider evidence that can be judicially noticed under Rule 201 of the Federal Rules of Evidence. Under Rule 201, courts may take judicial notice of a fact which is not subject to reasonable dispute either because it: (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record and government documents available from reliable sources. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A court may also take judicial notice of another court's opinion, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id*. at 690.

## **Legal Standards**

### A. Malicious Prosecution under California Law

Under California Law, a malicious prosecution claim requires proof that the underlying litigation (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. *Zamos v. Stroud*, 32 Cal. 4th 958

(2004).  In addition, the plaintiff must demonstrate "resulting damage by way of attorneys' fees incurred in defense, mental distress, and/or injury to reputation or social standing." *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.,* 165 Cal. App. 3d 1029 (1985).

## Argument

### A.    PLAINTIFF HAS ESTABLISHED DEFENDANTS' LIABILITY FOR MALICIOUS PROSECUTION

#### 1.  Plaintiff has Established Defendant Laura Ruano and Thomas Monteleone are Liable for Malicious Prosecution

##### a.  Defendants Directed Litigation to Be Filed Against Plaintiff Goldberg, and the Litigation Resolved in Plaintiff Goldberg's Favor

The first element to establish a cause of action for malicious prosecution is that the defendant commenced or directed the commencement of litigation which was pursued to a legal termination in the plaintiff's favor. *See Zamos v. Stroud*, 32 Cal. 4th 958 (2004). "It is well established that a 'favorable termination' of the malicious proceeding need not be a final determination of the controversy. The rule is 'that it is sufficient to show that the former proceeding had been legally terminated. The fact that such legal termination would not be a bar to another civil suit or criminal prosecution founded on the same alleged cause is no defense to the action for malicious prosecution; . . .'" *MacDonald v. Joslyn*, 275 Cal.App.2d 282,

289 (1969)(internal citations omitted); *see also Barrett v. Negrete*, 126 Fed.Appx. 816, 817 (9th Cir. 2005). A voluntary dismissal, though expressly made "without prejudice," is a favorable termination which will support an action for malicious prosecution. *Id.*

Here, Plaintiff Goldberg has clearly established that Defendants Ruano and Monteleone have both directed the filing of lawsuits on their behalf which have been resolved in Plaintiff Goldberg's favor. (SOF   23, 24, 25, 26, 42). None of the voluntary dismissals came of their own volition, without it being apparent that Defendant Ruano and Defendant Monteleone would not succeed on the merits of their lawsuits.

Three of the causes of action in the First Civil Action against Plaintiff Goldberg were dismissed upon the filing of a motion to dismiss; the remainder was disposed of in Plaintiff Goldberg's favor on December 13, 2022 after the anti-SLAPP motion was granted. (SOF   24, 26). On March 9, 2022, a temporary Restraining Order was denied in the Restraining Order action, although Defendant Ruano and Defendant Monteleone did not dismiss the action until August 12, 2022 after numerous continuances under advisement from the Judge (SOF   25). The Second Civil Action was dismissed on August 12, 2022, rather than responding to

the anti-SLAPP motion that was filed on August 8, 2022. (SOF    23).

Though technically still pending a determination of whether the dismissal is with or without prejudice, the Defendants also dismissed their Fourth Civil Action on August 8, 2025 when it became apparent the case would be dismissed pursuant to the anti-SLAPP provisions. (SOF    42). This does not include other administrative proceedings, such as the bar complaints filed by Defendant Ruano and the cohorts she has enlisted to assist in her efforts, which have also been dismissed (SOF    31, 34, 37, 48).

### b. Defendants Lacked Probable Cause for the Actions Brought Against Plaintiff Goldberg

The second element of a malicious prosecution claim is that the Plaintiffs lacked probable cause in bringing the action. An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must "determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." *Sycamore Ridge Apartments LLC. v. Naumann*, 157 Cal. App. 4th 1385, 1402 (2007).

A litigant will lack probable cause if he or she either (1) "'relies upon facts which he has no reasonable cause to believe to be true,'" or (2) "'seeks recovery

upon a legal theory which is untenable under the facts known to him.'" *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 292 (2006). "[I]n addressing the legal question of probable cause, it is not necessary to conclude the entire lawsuit was filed and maintained without probable cause. A malicious prosecution claim lies if probable cause is lacking for *any* 'ground' or 'theory' of liability." *Green Tree Headlands, LLC. v. Crawford*, 97 Cal.App.5th 1242, 1257 (2023)(Emphasis added).

At the time of filing the First Civil Action, Defendant Ruano knew that she had never been represented by Plaintiff Goldberg, knew that she had never signed a retainer agreement for representation by Plaintiff Goldberg, and did not even know who Plaintiff Goldberg was prior to serving the Dissolution Action. (SOF 11, 12, 13). Regardless, Defendant Ruano brought multiple causes of action against Plaintiff Goldberg based on an attorney client relationship that did not exist. (SOF 1, 9). Defendant Ruano also brought a cause of action against Plaintiff Goldberg for "intentional interference with marital relations," a cause of action not recognized in California law. (SOF 1, 2). On this alone, Plaintiff Goldberg could satisfy the lack of probable cause prong of the malicious prosecution elements. However, Defendant Ruano and Defendant Monteleone have engaged in a course of conduct that demonstrated lack of probable cause for all of their civil actions against Plaintiff Goldberg.

The Restraining Order (Third Civil Action) had no probable cause, such that even a temporary restraining order would not be issued and she was advised by the Police that service was legal and valid. (SOF    18, 19). The Second Civil Action, alleging causes of action for Trespass, Assault and IIED by Plaintiff Goldberg when, by its own facts, Plaintiff Goldberg was not present, also lacked probable cause, not only because Plaintiff Goldberg was not present, but because it was not legally tenable. The individuals that knocked on the door were process servers. (SOF    15, 16). The police that arrived when they called informed them that the presence of the process servers was lawful and they were not trespassing. Despite being on notice of the legality, the lack of probable cause did not stop Defendant Ruano and Defendant Monteleone from filing false charges of trespass against Plaintiff Goldberg with the police, which then had no criminal charges follow. (SOF    16, 17).

Finally, the Fourth Civil Action against Plaintiff Goldberg, again on its face, did not have any probable cause (SOF    40). The Defendants wholly failed to show they had a legally tenable argument.

Lacking probable cause for even one of the causes of action in one of the lawsuits is enough to support a cause of action for malicious prosecution. Here, the record shows Defendant Ruano and Defendant Monteleone lacked probable cause

for any of their actions.

### c. Defendants Acted with Malice in Bringing the Actions Against Plaintiff Goldberg

The final element of a malicious prosecution cause of action is that the plaintiff in the underlying action acted with malice. For purposes of a malicious prosecution claim, malice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." *Sycamore Ridge Apartments LLC. v. Naumann*, 157 Cal. App. 4th 1385, 1407 (2007), citing *Sierra Club Foundation v. Graham*, 72 Cal.App.4th 1135, 1157 (1999). "Malice 'may range anywhere from open hostility to indifference.'" (*Soukup, supra*, 39 Cal.4th at p. 292.) While the mere absence of probable cause, without more, "is not sufficient to demonstrate malice" (*Downey Venture v. LMI Ins. Co.,* 66 Cal.App.4th 478, 498–499, fn. 29 (1998), " '[m]alice may also be inferred from the facts establishing lack of probable cause.'" *Soukup*, supra, 39 Cal.4th at p. 292. "Maintaining a case one knows, or should know, is untenable, continues to harm the defendant as long as the case remains open, since the defendant must continue to prepare a defense to the case as long as the case appears to be moving forward." *Sycamore Ridge Apartments, LLC, supra,* 157 Cal.App. 4th at 1410. Since parties rarely admit an improper motive, malice is

22

usually proven by circumstantial evidence and inferences drawn from the evidence. *HMS Capital, Inc., v. Lawyers Title Co.,* 118 Cal. App. 4th 204, 218 (2004). "[T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant." *Id.*

The malice that Defendant Ruano has against Plaintiff Goldberg, which has driven every lawsuit, complaint, police report, bar complaint and other action that has followed, is clear on the face of the record. (SOF   43-47, 49, 70).  Defendant Ruano has made it her mission to create a story that paints Plaintiff Goldberg as a grand villain, and has designated herself as the only one who can stop her.

Defendant Ruano has filed bar complaints making outlandish allegations such as Plaintiff Goldberg buys properties through client trust accounts and submitted fraudulent documents to the court (SOF   32). Even though the trial court dismissed Defendant Ruano's motion to disqualify on March 28, 2022, that did not stop Defendant Ruano from filing it again in her Second Amended Complaint in the First Civil Action 4 months later (SOF   8), or in two separate bar complaints (SOF  30-32). Defendant Ruano's specific goal was to get Plaintiff Goldberg and the attorneys associated with her disbarred, as noted in an email between her and her prior counsel. (SOF   45)("Can we get Junior, Goldberg and Keleti now for civil

23

fraud and civil conspiracy added on? I really think we have a good case against

Keleti. He will be disbarred!" Mustafah has been dealing with Keleti's bs too…").

Defendant Ruano did this by acting in concert with others, such as Mustafa Ebid.

(SOF 43)("My mind is fried. Ran into Maher today. Already completed 400 pages

for the bar…"). See also SOF ¶43-47, 49, 70.

Disturbingly, Defendant Ruano has filed dozens of pages long affidavits

accusing anyone with the name "Goldberg" of being related to Plaintiff Goldberg in

order to create an image of Plaintiff Goldberg being from a family of criminals.

(SOF 45, 47, 70). She has not only created these filings to harm Plaintiff

Goldberg, but people that Plaintiff Goldberg has never met before and has created

defamatory allegations about people that she dearly loves with reckless disregard to

the falsity of those claims. (SOF 47, 70)("She became an attorney in her 40s

roughly around the time her father went to prison for 6 years for committing fraud

in Florida, Goldberg then became the sole and legal guardian of both parents after

his sentencing, assuming the business operations of "Goldberg and Associates"

from her father which was passed down to her.") In this same "report," Defendant

Ruano notes that Goldberg is not Julie Goldberg's maiden name, but still

determines that every Goldberg in the country is related to her, especially the

criminal ones. That is only one paragraph of a 90 page document filled with

contrived falsehoods, designed to prompt any legal action against Plaintiff Goldberg, further wasting time and resources to respond.

Defendant Ruano has clearly brought and maintained multiple actions against Plaintiff Goldberg despite her knowledge that the causes of action against Plaintiff were legally untenable. (SOF  60). Defendant Ruano has similarly gone out of her way to collude and plan with individuals that she knew did not like Plaintiff Goldberg and wanted to see her fail (SOF  43-50). Defendant Ruano knowingly did these actions against not only Plaintiff Goldberg but against those associated with her as well (SOF  70).

If there was only one lawsuit that failed, it would be hard to say there was malice. But Defendant Ruano and Monteleone have filed 4 separate civil actions and repeatedly brought the same causes of action, over and over in different courts and tribunal bodies, even after losing in evidentiary hearings. (SOF  60). She has stalked the Plaintiff and submitted hundreds pages long submissions to the police and the State Bar of California, as well as the trial court with information that has nothing to with Plaintiff Goldberg,are about people unrelated to Plaintiff Goldberg, defaming innocent people. (SOF  70). Defendant Ruano has reached out to witnesses to prevent their testimony, such as calling Maher Kadmiry at 10pm after receiving notice that he had been subpoenaed for a deposition. While, on the phone,

Mr. Kadmiry did not want to say that he was threatened, he did say that he was called by Defendant Ruano at 10pm, which would have been after Ms. Ruano received notice of the subpoena, and repeatedly said that it "wasn't safe" and he was concerned for his "life" and his "family." (SOF   46 ).

Malice is present when lawsuits are opened for improper purposes. The inferences all over the record show that Plaintiff Goldberg was brought in as a Defendant first because she represented Defendant Ruano's ex-husband, and then because Plaintiff Goldberg refused to run away. (SOF   60, 70).

Defendant Monteleone also actively participated in the  malice. "One may be civilly liable for malicious prosecution without personally signing the complaint initiating the . . . proceeding. If a person, without probable cause and with malice, instigates or procures the [action], he is liable." *Jacques Interiors v. Petrak*, 188 Cal. App. 3d 1363, 1371, 234 Cal. Rptr. 44 (1987); *See also Blancett v. Burr*, 100 Cal. App. 61, 62, 279 P. 668 (1929) ("It is enough if [the defendant] was instrumental in setting the law in motion and caused the [action] to proceed."). "Malice 'may range anywhere from open hostility to indifference.'" (*Soukup, supra*, 39 Cal.4th at p. 292.)  By supporting Defendant Ruano with false affidavits, bringing his own lawsuits with lack of probable cause and repeatedly dismissing them, Defendant Monteleone has shown his indifference to the subjective harm

behind the filings, and so demonstrated his malice. (SOF    56).

**B.    PLAINTIFF GOLDBERG HAS ESTABLISHED SHE HAS SUFFERED DAMAGES AS A RESULT OF THE MALICIOUS PROSECUTION AGAINST HER**

**a.  Plaintiff Goldberg has Established she has Incurred Financial Losses in the Form of Attorney Fees and Collateral Damages in Responding to the Litigation from the Defendants Necessitating Compensatory Damages**

The plaintiff in a malicious prosecution case may recover damages for attorney fees and costs spent in the underlying action, as well as for emotional distress and injury to reputation "because of groundless allegations made in pleadings which are public records." *Sagonowsky v. More,* 64 Cal.App.4th 122, 132 (1998). Compensatory damages may be awarded and may be based on reasonable estimates if they cannot be accurately measured. *Davis v. Local Union No. 11, Internat. Etc. of Elec. Workers*, 16 Cal.App.3d 686, 697 (1971). Punitive damages may be awarded on a finding of malice. Cal. Civ. Code, § 3294.

Plaintiff Goldberg has had to respond to multiple actions, and litigate this one in response to Defendant Ruano and Defendant Monteleone's actions. Even though she has appeared pro se, as co-counsel to limit expenses, she has still hired 5 different outside counsel to assist in responding to the actions, and such fees are recoverable under California law through Cal. Civ. Pro. 1717. (SOF    57, 58). The

exact amount of damages incurred continues to increase, as the Defendants continue to compound their litigation against Plaintiff Goldberg. (SOF    38-42).

Plaintiff Goldberg has incurred thousands of dollars in attorneys fees that she should have not needed to expend across several lawsuits as well as additional fees to cover her own cases. A reasonable estimate of the attorney fees across all actions would be about $458,880 in responding to and litigating all four civil actions, responding to the bar complaints, addressing the Department of Homeland Security and FBI, and the collateral damage caused by the Defendants' actions.

### b. Plaintiff Goldberg has Established she has Suffered Collateral Losses as a Result of the Litigation from the Defendants Necessitating Compensatory Damages

"[T]he measure of compensatory damages for the malicious prosecution of a civil action includes attorney fees and court costs for defending the prior action and compensation for emotional distress, mental suffering and impairment to reputation proximately caused by the initiation and prosecution of the action." *Bertero v. National General Corp.*, 13 Cal.3d 43, 59. (1974). "Damages potentially recoverable in a malicious prosecution action are substantial. They include out-of-pocket expenditures, such as attorney's and other legal fees; business losses; general harm to reputation, social standing and credit; mental and bodily harm; and

28

exemplary damages where malice is shown." *Babb v. Superior Court*, 3 Cal.3d 841, 848, fn. 4.(1971).

Plaintiff Goldberg has established that damages have been incurred, in an amount to be determined in trial, outside of attorney fees. The damage caused by the Defendants was extensive enough to cause Plaintiff Goldberg to lose staff, force closure of the New York office, cause reputational damages with clients, and cause Plaintiff Goldberg to seek contract assistance from an attorney to ensure her remaining clients' needs were taken care of timely. (SOF   57-59). Plaintiff Goldberg lost her staff and had to close an entire high volume office that had been open in New York for more than 15 years. (SOF   49, 50, 70). The stress caused by the Defendants' actions has additionally taken a significant toll on the physical and mental wellbeing of Plaintiff Goldberg.

A reasonable estimate of the collateral damage caused by the Defendants' actions, including the harm to reputation, closure of the New York office, lost staff, contract attorney fees, exacerbation of existing autoimmune issues by stress, and the stress damages caused to mental health would be $4,000,000.

Moreover, Plaintiff Goldberg is entitled to seek punitive damages pursuant to Cal. Civ. Pro. 3295. Under the controlling California statute, once liability and malice are established, the plaintiff may engage in financial discovery to address

the extent of punitive damages which the Court may award. *Farmers & Merchants Trust Co. v. Vanetik,* 33 Cal. App. 5th 638, 651 (2019)("a trial court may permit the discovery of a defendant's financial condition after liability has been determined, even if the plaintiff did not file a motion for pretrial discovery of financial condition").

Accordingly, it is requested, after liability is established, that this Honorable Court open discovery to address the issue of punitive damages.

**c.  Plaintiff Goldberg Requests Restrictions on Further Ability of the Defendants to File Legal Actions Against Her**

Upon a finding of liability, and separate from the issue of damages, it is requested this Honorable Court order restraints on the Defendants for future litigation, as well as a restraining order protecting Plaintiff Goldberg from the Defendants by not allowing them to come within 100 ft of Plaintiff Goldberg, her homes, her businesses, and her current and former employees.

Federal courts can "regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . . appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), "enjoining litigants with abusive and lengthy [litigation] histories is one such . . . restriction" that courts may impose. *De Long*, 912 F.2d at 1147.

Local Rule 83-8.3 provides that "[a]ny order issued under L.R. 83-8.2 shall be based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken."

The Ninth Circuit has recognized the need to balance control of vexatious litigants with their protected First Amendment right to petition the Court, and allows the Court, upon notice to the infringed party, to apply pre-filing restrictions on a litigant, including, for example, such requirements as posting a security to be paid pursuant to L.R. 83-8.2, prior to the filing of an action against Defendant Goldberg, or requiring some permission from the Court to file an action.

Given the extensive litigation in both state and federal courts, administrative agencies, government agencies and law enforcement that the Defendants have exposed Plaintiff Goldberg to, some kind of preventative measure is required to keep these matters from continuing to appear before this Court. This Court should further find that Ms. Ruano is a vexatious litigant, and require that any further filing of Federal and State complaints against the Defendant require leave of Court. *See, i.e*, *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).

As a further deterrent to future baseless actions, it is requested, pursuant to 28 U.S.C. 1651(a) the Court orders that any time Defendant Laura Ruano or Defendant

Thomas Monteleone brings an action or administrative proceeding; including but not limited to, filing a police report, filing a bar complaint, filing a complaint with any regulatory agency, and the matter is resolved or closed in Plaintiff Julie Goldberg's favor, the Defendant shall remit a payment of $75,000 to Plaintiff Julie Goldberg in addition to any attorney fees and costs determined by the reviewing court.

## CONCLUSION

In light of the foregoing, it is requested that this Honorable Court find that the Partial Motion for Summary Judgment should be granted, as Plaintiff Goldberg has established the three requisite elements of malicious prosecution, and has shown that she has suffered damages requiring compensatory and punitive damage awards. It is further requested that a brief discovery period be set on the issue of punitive damages pursuant to Cal. Civ. Pro. 3295.

Dated:  August 25, 2025

_s/ Julie A. Goldberg_
Julie A. Goldberg
Goldberg & Associates

## CERTIFICATION OF COUNSEL PURSUANT TO L.R. 11-6.2

The undersigned, Julie A. Goldberg, certifies pursuant to Local Rule 11-6.2 that this brief contains 6,985 words, which comports with L.R. 11-6.1, setting a 7,000 word limit.

Dated:  August 25, 2025

*s/ Julie A. Goldberg*
Julie A. Goldberg
Goldberg & Associates

**PROOF OF SERVICE**

33

At the time of service, I was over 18 years of age and a party to this action. I am a resident in the county of Los Angeles, State of California. My business address is 14370 Ventura Boulevard, Sherman Oaks, CA 91423.

On August 26, 2025, I served true copies of the following documents described as:

**PLAINTIFF JULIE ANN GOLDBERG'S NOTICE OF MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT; NOTICE OF LODGING OF EVIDENCE; STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; [PROPOSED] ORDER**

on the interested parties in this action as follows:

LAW OFFICES OF MICHAEL LABRUM
MICHAEL D. LABRUM (SBN 284403)
2625 Townsgate Road, Suite 330 (Third Floor)
Westlake Village, CA 91361
Telephone: (805) 267-1171
Facsimile: (805) 852-2164
Michael@LabrumLaw.com
*Counsel for Plaintiffs Laura R. Monteleone and Thomas A. Monteleone*

 **[X] BY ELECTRONIC SERVICE**: Pursuant to CCP § 1010.6(a)(4), I caused such document(s) to be electronically served, at the following email address listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 26, 2025, in Los Angeles, California.

_____
Christopher Feliciano

34