UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ANN GOLDBERG, | Case No. 2:23-cv-02395-GW (MAR) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| LAURA RACHEL RUANO and THOMAS MONTELEONE, | |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California and the district judge's Order of June 29, 2026, ECF Docket No. ("Dkt.") 322.

**I.**

**<u>SUMMARY OF RECOMMENDATION</u>**

On January 8, 2025, Plaintiff Julie Ann Goldberg ("Plaintiff") filed an Ex Parte Application for terminating or evidentiary sanctions. Dkt. 320 ("Application"). For the reasons discussed below, it is recommended that Plaintiff's Application be GRANTED, in part, and a sanctions order be entered against Defendants..

///

///

///

## II.

## BACKGROUND

The Court does not recount the full and extensive history of this matter here. As pertinent to the instant Application, and as summarized in this Court's prior Order Granting Plaintiff's Motion to Compel (Dkt. 306), Plaintiff's First Amended Complaint alleges a single claim against Defendants for malicious prosecution. Dkt. 26 ("FAC"). Plaintiff alleges that, following her legal representation of nonparty Luis Ruano in divorce proceedings against Defendant Laura Rachel Ruano ("Ruano"), Ruano and her father, Defendant Thomas A. Monteleone ("Monteleone") (collectively, "Defendants") brought a series of meritless civil suits against Plaintiff, filed false police reports and numerous state bar complaints against her, and provided false information to the FBI and the Department of Homeland Security about Plaintiff and her law firm. See generally Dkt. 262 (adopting district judge's tentative ruling at Dkt. 259 granting Plaintiff's Motion for Summary Judgment ("Summary Judgment Order")).

Plaintiff moved for summary judgment on her malicious prosecution claim, and the district judge granted the motion with respect to liability. Summary Judgment Order, Dkts. 259, 262. The district judge subsequently declared Defendants to be vexatious litigants, and entered an order restricting Defendants' ability to file future suits in this district. Dkt. 283. On the same day, the district judge reopened discovery "solely for all damages-related discovery, including discovery relevant to compensatory damages and punitive damages issues, as well as Defendants' assets and ability to pay."[1] Dkt. 282 at 1. Accordingly, on February 20, 2026, Plaintiff served upon each Defendant (1) separate sets of interrogatories; (2) separate sets of requests for production of documents ("RFPs"); and (3) separate deposition notices.

---

[1] The court later set a discovery cutoff of June 15, 2026. Dkt. 301. All discovery, including compliance with any motion to compel, was to have been completed by that date. Id.

Declaration of Julie Ann Goldberg ("Goldberg MTC Decl."), Dkt. 291-1 ¶ 5; Dkt 291-2, Exs. A –F.

Thirty days later, on March 22, 2026, Defendants produced objection-only responses to the interrogatories and RFPs.  Goldberg MTC Decl. ¶ 7; Dkt. 291-2, Ex. G.  Defendants also objected to the Notices of Deposition.  Dkt. 291-2, Ex. G.  On April 7, Plaintiff met and conferred with Defendants' counsel ("Counsel"), who agreed that Defendants would appear for deposition at Plaintiff's office on April 23 and 24, 2026.  Goldberg MTC Decl. ¶ 13.  Neither Defendant appeared for deposition on either date.  Id.

At the April 7 meet and confer, Plaintiff also informed Counsel that she would be moving to compel further responses to the interrogatories and RFPs, and provided Counsel with Plaintiff's portion of the joint stipulation mandated by Local Rule 37.  Goldberg MTC Decl. ¶ 11; see C.D. Cal. L.R. 37-2 (requiring that discovery disputes be filed in the form of a joint stipulation).  At no point, however, did Counsel ever return or submit Defendants' portion of the joint stipulation.  Goldberg MTC Decl. ¶¶ 14, 17; C.D. Cal. L.R. 37-2.2.  Plaintiff proceeded to file a Motion to Compel (Dkt. 291), the opposition to which was due no later than May 8, 2026.  C.D. Cal. L.R. 7-9, 37-2.4.  Defendants did not timely oppose the motion, and on May 11, 2026, Plaintiff filed a notice of Defendants' failure to oppose.  Dkt. 299.  On May 19, 2026, eleven days after the opposition was due, and four days after any reply would have been due, Defendants filed an opposition, with no explanation for the untimeliness of the filing.  Dkt. 302.  Plaintiff filed a reply on May 26, 2026.[2]  Dkt. 303.

This Court, notwithstanding Defendants' late filing, considered Defendants' opposition and granted Plaintiff's Motion to Compel on the merits.  Dkt. 306 ("Discovery Order") at 4, 8.  The Discovery Order required each Defendant to (1) provide further responses to Plaintiff's interrogatories and RFPs no later than June 9,

---

[2]  The undersigned was assigned to this matter on May 28, 2026.  Dkt. 305.

3

2026; (2) appear for deposition no later than June 15, 2026; and (3) provide documents requested pursuant to Federal Rule of Civil Procedure 30(b)(2) no later than three days prior to any deposition. Dkt. 306 at 7–8.

On the evening of Friday, June 5, 2026, Plaintiff sent an e-mail to Counsel noticing Monteleone and Ruano's depositions for Wednesday, June 10 and Thursday, June 11, respectively. Dkt 307-1, Ex. A. That same evening, Plaintiff sent another e-mail stating that she would prefer to have her own counsel conduct the depositions, but that "Plaintiff's counsel is not available until June 18 or June 19." Dkt. 307-1, Ex. B. Plaintiff indicated that she would stipulate to those dates if Defendants were agreeable, but would otherwise proceed with the depositions on June 10 and June 11, as stated in Plaintiff's earlier e-mail. Id. Plaintiff sent an additional e-mail on the evening of Monday, June 8 to the same effect. Dkt 307-1, Ex. C. As of Friday, June 12, Plaintiff had not received any responses to her e-mails. Declaration of Julie Ann Goldberg, ("Goldberg Ex Parte Decl."), Dkt. 307 ¶¶ 7, 10. Neither Ruano nor Monteleone appeared for deposition on June 10 or 11, nor produced any supplemental responses by the Court's June 9, 2026 deadline. Id. ¶ 11.

On Friday, June 12, 2026, Plaintiff filed an ex parte application to enforce the Discovery Order. Dkt. 307. As of the close of business on Wednesday, June 17, 2026, Defendants had not responded to Plaintiff's ex parte application. This Court granted the application on June 18, 2026.[3] Dkt. 309 ("Ex Parte Order"). In so doing, the Court found that Monteleone and Ruano had failed to comply with the Discovery Order, ordered each Defendant to serve further responses within forty-eight hours, and ordered each Defendant to appear for deposition at Plaintiff's office, so long as Plaintiff provided at least 48 hours prior notice. Id. at 2–3. The Court deemed all objections waived and awarded Plaintiff her reasonable expenses, in accordance with

---

[3] Defendants appear to have filed an opposition at 11:20 a.m. on Thursday, June 18, as this Court's order granting the ex parte application was being processed for docketing. Dkt. 308.

4

Federal Rules of Civil Procedure 37(b)(2)(C) and 37(d)(3).  Id. at 4.  The Court also imposed evidentiary sanctions and ordered Defendants to show cause why further sanctions should not be imposed.[4]  Id.at 4–5.

On June 18, 2026, Plaintiff sent an e-mail noticing Monteleone's deposition for June 25, 2026 and Ruano's deposition for June 26, 2026.  Dkt. 316-1 at 15.  Neither Defendant appeared for deposition on the noticed dates.  Declaration of Danielle Fackenthal, Dkt. 320 ¶ 3.  Plaintiff also represents that neither Defendant has ever made any supplemental production in accordance with this Court's Discovery Order or Ex Parte Order.  Dkt. 320 at 13 ¶ 29.  On Friday, June 26, therefore, Plaintiff, through counsel, filed the instant Ex Parte Application for Sanctions, including terminating sanctions.  Dkt. 320.  Specifically, Plaintiff asks that default judgment be entered against Defendants, and that they be precluded from arguing "that Plaintiff lacks discovery, lacks financial evidence, lacks foundation, lacks authentication, lacks an opportunity to test evidence, or lacks a complete record."  Dkt. 320 at 24:4–7.  Plaintiff further contends that Defendants "should be barred from opposing Plaintiff's punitive-damages and ability-to-pay evidence on the ground that the record is incomplete or Plaintiff lacks evidence Defendants were ordered to provide."  Id. at 24:24–26.  Defendants submitted an opposition on June 30, 2026.  Dkt. 323.  The matter stands ready for decision.

## III.

## DISCUSSION

**A.    APPLICABLE LAW**

Federal Rule of Civil Procedure 37(b) ("Rule 37") states that when "a party . . . fails to obey an order to provide or permit discovery . . . the court . . . may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Rule 37(b) sanctions can include "directing that . . . designated facts be taken as established," "prohibiting the

---

[4]  The Court notes that Defendants did not seek review of this, or any other, order of the undersigned.

disobedient party from . . . opposing designated claims," or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii),(vi). Courts have "great latitude in imposing sanctions for discovery abuse." Dahl v. City of Huntington Beach, 84 F.3d 363, 367 (9th Cir. 1996). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent'." RG Abrams Ins. v. Law Offices of C.R. Abrams, 342 F.R.D. 461, 493 (C.D. Cal. 2022) (quoting NHL v. Metro. Hockey Club, 427 U.S. 639, 643 (1976)).

Rule 37(b)(2) sanctions must be "just," and must be "specifically related to the particular claim which was at issue in the order to provide discovery." Guifu Li v. A Perfect Day Franchise, Inc, 281 F.R.D. 373 (N.D. Cal. 2012) (citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)). Unless a proposed sanction implicates dismissal of an action, the court need not identify "willfulness, fault, or bad faith[,]" even if the sanction is severe. See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001); see also Sas v. Sawabeh Info. Servs., No. CV 11-4147-MMM (MANx), 2015 WL 12711646, at *6 (C.D. Cal. Feb. 6, 2015) ("If the sanction ordered is less than and/or is not tantamount to dismissal, the disobeying party's noncompliance need not be proven to be willful or in bad faith."). "'Dispositive' sanctions," however, "such as dismissal, default, and their functional equivalents (i.e. refusing to allow the disobedient party to support or oppose designated claims or defenses) . . . must meet a higher standard." In re Tan, No. ADV. 00-04199, 2007 WL 7541007, at * 6 n.19 (9th Cir. BAP Sept. 28, 2007) (internal citations omitted). Terminating sanctions may be imposed only if there has been "willfulness, bad faith, or fault" by the party who has disobeyed a discovery order. Sas v. Sawabeh Info. Servs., No. CV 11-4147-MMM (MANx), 2015 WL 12711646, at *6 (C.D. Cal. Feb. 6, 2015); Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004). At the same time, "disobedient conduct not

6

shown to be outside the control of the litigant" is all that is required to demonstrate willfulness, bad faith, or fault. Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993); RG Abrams, 342 F.R.D. at 512.

In determining whether terminating sanctions would be just, courts look to five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998)9 F.3d at 358 (quoting Malone v. United States Postal Service, 833 F.2d 128, 130 (9th Cir.1987). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990).

**B.     ANALYSIS**

**1.     Defendants have received adequate notice and a meaningful opportunity to respond.**

Here, Defendants raise a threshold argument that the imposition of any sanctions here would violate due process because Defendants have not had a full and fair opportunity to be heard. Dkt. 323 ("Opposition") at 9–12. This argument is not well-taken. "[T]he plain language of Rule 37(b) contains no requirement mandating a noticed motion or opportunity to be heard before sanctions—including default—may be imposed. 'If a party . . . fails to obey an order . . . the court *may* issue further just orders." Dreith v. Nu Image, Inc., 648 F.3d 779, 787 (9th Cir. 2011) (quoting Fed.R.Civ.P. 37(b)(2)(A)); see also Malone, 833 F.2d at 133 (party "can hardly be surprised by a harsh sanction [such as dismissal] in response to willful violation of a pretrial order"). Moreover, an opportunity to be heard with respect to Rule 37

sanctions "does not require an evidentiary hearing in every case."[5]  Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003).  The opportunity to submit briefs will suffice.  Id.  Here, where Defendants have opposed the imposition of sanctions, will have the opportunity to submit further briefing to the district judge, and may have the opportunity to argue before the district judge prior to the imposition of any Rule 37 sanction, there are no due process or notice concerns.

### 2.      Defendants willfully disobeyed this Court's orders.

Turning to the merits of Plaintiff's application for sanctions, there is little doubt that Defendants have willfully defied this Court's Discovery Order and Ex Parte Order.  Defendants' argument that any failure to comply with these orders because of a "compressed timeline" is unavailing, and inconsistent with Defendants' own stated position.  Opposition at 14:10.  First, Defendants can hardly claim that Plaintiff's interrogatories and RFPs caught them by surprise, as they were served nearly six months ago.  Second, this Court's Discovery Order issued on June 5, and the Ex Parte Order required supplemental productions by June 20, yet Defendants produced nothing over this two-week span.[6]  Third, and most tellingly, Defendants themselves have acknowledged that their failure to comply with this Court's orders did not result from any shortage of time in which to gather and produce information, but rather was the product of a willful and deliberate decision not to do so.  In response to this Court's Order to Show Cause, filed after the expiration of all deadlines at issue here, Defendants asserted that they "are not inclined to participate in the deposition process" and, "[a]gainst defense counsel's advice, Defendants do not

---

[5]  Although the Paladin court addressed sanctions pursuant to Rule 37(c), that rule encompasses the sanctions available pursuant to Rule 37(b)(2)(A).  Fed. R. Civ. P. 37(c)(1)(C).

[6]  Defendants' Counsel also misstates the record, insofar as he states that he had "documented unavailability" between June 5 and June 12, and that Plaintiff was aware of this unavailability.  Opposition at 13-14.  Plaintiff's second e-mail on June 5 indicated that her own counsel was not available on June 10 or 11, not that Defendants' counsel was unavailable on those dates.  Indeed, the first indication in the record that Defendants' counsel had any issues between June 5 and June 12 was in a declaration attached to Defendants' response to this Court's Order to Show Cause, which Defendants did not file until June 24, 2026, after the expiration of all deadlines at issue here.  Dkt. 317 at 17 ¶ 4.

desire to appear for depositions and produce financial documentation."[7]  Dkt. 317 at 2:16–19.  Counsel has similarly stated that "[a]gainst [his] advice, Defendants are unwilling to participate in the depositions and discovery production . . . ." Declaration of Michael Labrum, Dkt. 317 at 18 ¶ 6.  Defendants' failure to comply was a conscious choice.

### 3. Plaintiff has been prejudiced by Defendants' noncompliance.

Thus, only the questions of prejudice to Plaintiff and the availability of less drastic sanctions remain.  Adriana, 913 F.2d at 1412.  With respect to the former, the court reopened discovery "solely for all damages-related discovery, including discovery relevant to compensatory damages and punitive damages issues, as well as Defendants' assets and ability to pay."  There is no dispute that Plaintiff has been unable to obtain any discovery from Defendants as to several of these questions, including punitive damages, Defendants' assets, and Defendants' ability to pay.[8] "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case."  Valley Engineers, 158 F.3d at 1057 (internal quotation marks omitted).  There can be little question that Defendants' intransigence has compromised Plaintiff's ability to prove certain elements of her damages claims, including the very aspects identified by the district judge as warranting further discovery, such as Defendants' assets.  Defendants' opposition on this point is wholly unpersuasive.  Defendants contend that Plaintiff has not been prejudiced because "depositions can still occur, the documents can still be produced, and Plaintiff can still

---

[7] Defendants appear to attempt to justify their refusal to follow court orders by pointing to alleged discovery violations by Plaintiff.  Dkt. 317 at 2:15–19.  Even assuming such violations have occurred, Defendants' proper remedy, of course, is to seek relief from this Court, not to willfully defy its orders.

[8] The Court notes that in prior briefing, Defendants represented to the Court that "Defendants will concede and stipulate to ability to pay."  Dkt. 302 at 5:14-15.

obtain damages discovery through a court-supervised compliance schedule."[9] Opposition at 16:14–16.  Defendants fail to acknowledge, however, that the discovery period set by the district judge has closed, and can only be reopened upon a showing of good cause.  See Fed. R. Civ. P. 16(b)(4).  Defendants put forward no argument, let alone authority, that their own willful disobedience of court orders would constitute sufficient good cause to warrant a further extension of the fact discovery period.[10] The prejudice factor, therefore, weighs strongly in favor of, if not entry of a default judgment, some "functional equivalent," such as the preclusion of certain arguments pertaining to damages.

### 4.    Lesser sanctions are warranted.

This leads to the fifth factor, the availability of lesser sanctions, and presents a closer question.  As described above, this Court has already twice ordered Defendants to appear for deposition and provide further discovery responses, to no avail.  In both instances, the Court awarded Plaintiff her expenses, first pursuant to Rule 37(a)(5)(A) (Discovery Order at 7) and then as sanctions pursuant to Rule 37(b)(2)(C) and (d)(3) Ex Parte Order ¶ 11.  In the latter instance, the Court also deemed all discovery objections waived and precluded Defendants from relying upon any improperly-withheld discovery.  Ex Parte Order ¶¶ 10, 14.  Notwithstanding these lesser sanctions, however, Defendants proceeded to express a willful refusal to comply with this Court's orders, or, it would seem, any future orders.[11]

---

[9]  The potential efficacy of alternative measures or sanctions is the focus of the fifth factor, discussed below, and is distinct from the question of prejudice to Plaintiff.

[10]  The Court notes further that Defendants appear to condition any future compliance with court orders on the court's imposition of some sort of sanction on Plaintiff.  See, e.g., Opposition at 15:9–10 ("The fact that Defendants are acting against counsel's advice does not establish willfulness or bad faith; it demonstrates frustration with what Defendants perceive as unequal treatment."); 21 ¶ 5 (The Court should require Plaintiff to appear for her deposition first . . . .  More, the Court should require Plaintiff to produce . . . documents . . . prior to Defendants producing documents. Defendants merely request to be treated fairly and that both sides be required to comply.")

[11]  See note 10, above.

That said, the Court is not persuaded that terminating sanctions in the form of the entry of a default judgment is the only remedy that could afford Plaintiff some relief. The Court acknowledges that Plaintiff's ability to pursue some of her claims, such as her punitive damages claim, is greatly impaired by her inability to obtain any discovery from Defendants. Other elements of her claims, however, such as her claim for compensatory damages, are not dependent upon information originating with Defendants. To preclude Defendants from, for example, contesting the reasonableness of Plaintiff's attorney's fees or the degree of her own emotional distress would confer an undue benefit on Plaintiff and exceed the scope of Defendants' violations. See Compagnie des Bauxites, 456 U.S. at 707 (sanctions must be related to the claim at issue in the discovery order).

Accordingly, the undersigned recommends lesser sanctions in the form of an order (1) barring Defendants from opposing or challenging Plaintiff's evidentiary submissions regarding punitive damages, including evidence regarding Defendants' financial condition and ability to pay; (2) precluding Defendants from introducing, relying upon, or referring in any way to any testimony, documents, or other information that Defendants were ordered to produce in this Court's Discovery Order and Ex Parte Order; (3) precluding Defendants from raising any argument arising from or enabled by their failure to comply with this Court's Discovery Order and Ex Parte Order; and (4) awarding Plaintiff her reasonable attorney's fees and expenses arising from Defendants' noncompliance, including expenses incurred in connection with the instant Ex Parte Application.

///
///
///
///
///
///

11

# IV.

# RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court issue an order:

(1) adopting this Report and Recommendation;

(2) granting Plaintiff's Ex Parte Application for Sanctions (Dkt. 320), in part; and

(3) entering a sanctions Order against Defendants

    a.  barring Defendants from opposing or challenging Plaintiff's evidentiary submissions regarding punitive damages, including evidence regarding Defendants' financial condition and ability to pay;

    b.  precluding Defendants from introducing, relying upon, or referring in any way to any testimony, documents, or other information that Defendants were ordered to produce in this Court's Discovery Order (Dkt. 306) and Ex Parte Order (Dkt. 309);

    c.  precluding Defendants from raising any argument arising from or enabled by their failure to comply with this Court's Discovery Order and Ex Parte Order; and

    d.  awarding Plaintiff her reasonable attorney's fees and expenses arising from Defendants' noncompliance, including expenses incurred in connection with the instant Ex Parte Application.

Dated:  July 10, 2026

HONORABLE M  RGO A. ROCCONI
United States Magistrate Judge

12

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are generally subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and to review by the district judge whose initials appear in the docket number.  Here, however, Judge Wu has already ordered the parties to show cause as to whether this Report and Recommendation should be adopted.  Dkt. 322.  Rather than filing objections, therefore, the parties are directed to file written responses in accordance with Judge Wu's order no later than July 21, 2026.  Id.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of judgment.

13